79 N.J. Super. 285 (1963)
191 A.2d 316
VALERIE PERRY AND ROBERT PERRY, HER HUSBAND, PLAINTIFFS,
v.
ALLEN B. CRUNDEN, JR. AND THE MOUNTAINSIDE HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided May 20, 1963.
*286 Mr. Myron W. Kronisch for plaintiffs (Messrs. Roskein, Kronisch, Felzenberg & Mandell, attorneys).
Mr. Raymond C. Connell for defendant Dr. Allen B. Crunden, Jr. (Messrs. Connell & Andresakes, attorneys).
GIULIANO, J.S.C. (temporarily assigned).
The defendant, Dr. Allen B. Crunden, Jr., makes this motion for a determination as to the extent to which he might participate in the trial of the pending action. He urges that this court grant him leave to participate to the extent of cross-examining the plaintiffs and their witnesses on all issues and that he be afforded the opportunity of presenting opening and closing statements to the jury. The action was instituted by the plaintiffs, Valerie Perry and Robert Perry, her husband, on March 14, 1961 by the filing of a complaint, with demand for jury trial, charging Dr. Crunden and the Mountainside Hospital with negligence and seeking to recover damages for personal injuries, expenses incurred and loss of society.
Mountainside Hospital filed an answer to the complaint on April 6, 1961. Dr. Crunden failed to file an answer, and on September 15, 1961 a default was entered against him by order of the court. The complaint, pretrial order and depositions filed in this action indicate that Dr. Crunden was Mrs. Perry's obstetrician and rendered her prenatal and postnatal care and delivered her child at the Mountainside Hospital. The negligence complained of in the complaint charges both Dr. Crunden and the hospital with failure to use reasonable care during the delivery of the child and during her postnatal *287 period of confinement at the hospital. More specifically, the pretrial order dated March 29, 1963 states the following:
"As to Crunden  On or about January 19, 1960, the female Plf. was admitted to the Mountainside Hospital at the direction of the Deft. physician for the delivery of her first child. On that date, and prior thereto, the female plf. placed herself under the care of and employed the physician in connection with said delivery and post delivery care, and the physician undertook to care for the Plf. Valerie Perry, and undertook to exercise that special degree of skill and care normally possessed by the average physician who devotes special study and attention to obstetrics. During or after delivery, the physician cut a certain vein which began to bleed. The Physician told Plf., Robert Perry, of this occurrence on January 20, and said it was a perfectly natural accident, and that no harm would result from it. The physician failed to warn or notify the Hospital or its agents, servants, or employees, of the bleeding, either verbally or in the hospital report. At such times as the Physician did visit the Plaintiff, he failed to examine the female Plf. so as to keep himself apprised of her condition. At such times as the Deft. Physician visited the hospital, he failed to require such tests and examinations which would inform him of the female Plfs. condition, and he failed to employ and utilize those facts which were available to him to properly diagnose the continued bleeding which was taking place. As a result of the Physician's negligence aforementioned, the female Plf. has sustained painful and permanent injuries."
The court permitted Dr. Crunden to state his factual contentions as to nonliability solely for the purposes of the record. These contentions appear in the pretrial order as follows:
"This Deft. [Dr. Crunden] denies any act of negligence of either commission or ommission in the care and treatment rendered by him to the female Plf. which in any was resulted directly or proximately in the injuries and damages alleged to have been sustained by the Plfs. as set forth in the complaint. This Deft. further contends that by reason of his care and treatment the female Plf. delivered a healthy, normal baby and that her recovery thereafter was normal and complete."
Similar allegations were lodged against the hospital, and in addition it was alleged that the agents of the hospital failed to warn or notify the physician relative to the plaintiff's bleeding, fainting and weakness.
*288 On September 15, 1961, by order of this court, a default was entered against Dr. Crunden for failure to file an answer. Thereafter, on October 19, 1961, pursuant to an ex parte application by Dr. Crunden, the court entered an order which provided as follows:
"1. Plaintiffs' attorney shall not nor shall anyone acting on his behalf proceed to prove damages on behalf of the plaintiffs and against the defendant, Allen B. Crunden, Jr.
2. The defendant Allen B. Crunden, Jr., shall have until Friday, November 10, 1961, to bring on before the Court a motion supported by affidavits to set aside the default previously entered in favor of the plaintiffs and against him."
Subsequently, a motion to set aside the default was filed by Dr. Crunden pursuant to R.R. 4:56-3. On January 21, 1963 this court denied the motion. On January 29, 1963 a motion was filed with the Superior Court, Appellate Division, for leave to appeal from that order. The Appellate Division, by order dated March 14, 1963, denied both Dr. Crunden's application for leave to appeal at that time and his alternative application for a determination as to the extent to which he would be permitted to participate at the trial in cross-examination of the plaintiffs' witnesses. The alternative application was denied without prejudice to defendant's right of the defendant to seek such limited participation at the trial by an appropriate motion before the trial court.
On March 29, 1963 a pretrial was held before this court, and the pretrial order directed Dr. Crunden to file a motion seeking "limited participation" pursuant to the order of the Appellate Division. He then filed a motion returnable on May 3, 1963, and on that date the matter was argued orally.
R.R. 4:56-2(b) governs the procedure to be followed for the entry of final judgment by default wherein the claim for damages is unliquidated. The rule reads as follows:
"In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless he is *289 represented in the action by a guardian or guardian ad litem who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings with or without a jury or take such proceedings as are necessary or proper. Writs of inquiry are superseded." (Emphasis added)
In Reilly v. Perehinys, 33 N.J. Super. 69, 72 (App. Div. 1954), Judge Jayne interpreted the third sentence of R.R. 4:56-2(b) as follows:
"R.R. 4:56-2(b) does not dispose of the first question  namely, whether proofs should be taken on the issue of liability. The rule  it deals with a default for failure to plead in a case of an unliquidated claim (and that is the situation here)  goes no further than to authorize hearings `if * * * it is necessary' to establish the truth of any averment by evidence."
The court further observed that the procedure followed by the courts under R.R. 4:56-2(b) "has been left to practice." This court construes Judge Jayne's interpretation of the rule to mean that the procedure to be followed in the conduct of a hearing or trial after a default is entered is within the sound discretion of the judge before whom the hearing or trial is to be held. In this respect counsel for the respective parties conceded during oral argument that the extent to which a defaulting defendant might participate in a trial of this type was left to the discretion of the court.
After reviewing the language of R.R. 4:56-2(b), this court is convinced that it is the intention of the rule to place broad discretion in the hands of the court to "conduct such hearings" as would be in furtherance of "establishing the truth of the averments" contained in the complaint and yet be consistent with the spirit of the sanction imposed against the defendant in default by R.R. 4:56-1. Thus, the terms *290 under which a trial held pursuant to R.R. 4:56-2(b) is to be conducted have been made flexible so that a court can adopt such procedures as may be required to render substantial justice in each case.
In their briefs the plaintiffs and defendant Dr. Crunden cite Fox v. Fox, 76 N.J. Super. 600 (Ch. Div. 1962); Douglas v. Harris, 35 N.J. 270 (1961), and Reilly v. Perehinys, supra, in support of their respective contentions relating to the extent to which defendant should participate. During oral argument counsel for the plaintiffs argued that the language found on page 602 of 76 N.J. Super. of Judge Herbert's opinion in Fox was controlling in the case sub judice:
"* * * Had Morris Fox and Lillian Horowitz ignored the service of process made upon them, surely there would be, after that type of default, no question of participation in the proceedings for entry of judgment; the plaintiff could follow conventional practice and present her proofs ex parte to the court * * *."
On its face, the language just quoted would appear to be unequivocal and leave little room for the exercise of judicial discretion in the instant case. However, when that passage is interpreted in the context of the entire opinion it becomes apparent that the holding in Fox was never intended to be controlling under the facts of the instant case.
Factually, the Fox case involved a suit in three counts, one for the partition of real estate, and the second and third demanding possession of household goods or, in the alternative, damages. Both defendants failed to answer interrogatories and a default was entered against each of them pursuant to R.R. 4:27-2(b)(3). The second and third counts were for unliquidated damages and final judgment could not be entered by the clerk pursuant to R.R. 4:56-2(a).
Insight into the scope of the quoted dictum from Fox can be gleaned from other language of the court's opinion:
"It may be possible to imagine a situation in which it would be sound discretion for a court, in order to get assistance in evaluating a plaintiff's claim to judgment under R.R. 4:56-2(b), to allow a *291 defendant to cross-examine, or even present counter proofs. This is not such a case; the claims of the plaintiff here are simple ones and I perceive no sufficient reason to give the defaulted defendants an opportunity to participate in the taking of the proposed deposition." (76 N.J. Super., at pp. 604-605)
Referring to the facts and circumstances underlying Fox as a basis for comparison, it is the opinion of this court that the issues presented in the present case are not simple ones. After analyzing Judge Herbert's opinion, this court concludes that the instant case can be distinguished from Fox in the following respects:
1. In the instant case a jury may sit as the triers of the facts rather than a judge as was the case in Fox.
2. The complaint in the present case charges Dr. Crunden with neglect in the performances of his professional skills, whereas in Fox the complaint sought the partition of real estate, the possession of certain furniture and household equipment or, in the alternative, damages for the reasonable value of the chattels.
3. In this case Dr. Crunden's exposure is considerable, whereas in Fox not only was the potential exposure limited to the value of the furniture and household equipment, but also the damages themselves were much more readily ascertainable.
4. In this case the triers of the facts must decide not only the question of damages, as was the case in Fox, but also the question of liability, and this will involve the testimony of expert witnesses.
5. In Fox the defendants arbitrarily refused to comply with a court order directing them to answer interrogatories, and thus their action could very well have been viewed as contumacious.
No case cited by either party is directly in point, and this court has not been able to find any in the course of its research. However, the available cases do indicate that a defaulting defendant may participate to some extent in a trial of this nature under certain undefined circumstances.
*292 After considering the language in Reilly v. Perehinys and Douglas v. Harris, supra, and Interchemical Corp. v. Uncas Printing & Finishing Co., 39 N.J. Super. 318 (App. Div. 1956), in conjunction with Fox v. Fox, supra, this court concludes that under the facts of the instant case it is permissible for Dr. Crunden to participate during the trial under terms prescribed by the court in the exercise of its sound discretion.
The next question is the extent to which such participation may be permitted.
In determining the extent to which counsel for a defaulting party may participate, the court might well ask itself the question  Can counsel for the defaulting defendant make any material contribution in aiding the triers of the facts in their search for the truth? The reply to this question can be found in 5 Wigmore, Evidence (3d ed. 1940), § 1367, at pages 28 and 29, where Professor Wigmore had the following to say with respect to the contribution cross-examination makes in establishing where the truth lies:
"For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. * * *"
* * * it [Cross-examination] is beyond any doubt the greatest legal engine ever invented for the discovery of truth." (Emphasis added)
A careful analysis of the language contained in the opinions cited by the parties in their briefs is enlightening and instructive. It is the opinion of this court that, due to the complexity of the issues to be tried, the prospective proofs and testimony to be adduced, and defendant's potential exposure to liability, counsel for Dr. Crunden be permitted to cross-examine the plaintiffs' witnesses and thus perhaps aid the jury in its determination of both liability and damages. However, the defendant's request to address the jury with either an opening or closing statement is denied.
In their brief the plaintiffs urge that, If the defendant, Dr. Crunden could ignore a summons and then be accorded the *293 rights to cross-examine and address the jury, why should he bother to answer and be exposed to the expense and trouble which are concomitant with being a party in a law suit?
In cases similar to the one at bar two answers to the question posed by counsel for the plaintiffs are readily apparent: (1) the defaulting defendant would be prohibited from offering direct evidence in support of his case, and (2) the defaulting defendant would be denied an opportunity of addressing the jury in an opening and closing statement. Certainly these sanctions would be sufficient deterrents in most cases.
In addition, counsel for the plaintiffs argue that in denying the defendant's motion to set aside the default entered, the court "closed the door" on his right to participate at the trial, and that to allow him to participate to the extent of cross-examining of the plaintiffs' witnesses would greatly weaken the effect of the January 21, 1963 order. The court takes this opportunity to comment that when it refused to set aside the default entered September 15, 1961, it did so with the full realization of the drastic ramifications which such a ruling might have. To allow the defendant the right of cross-examination at the trial is not inconsistent with the court's prior ruling.
In conclusion, the courts of this State should, and must, constantly endeavor to exercise with prudence the discretion vested in them, to the end that our laws will continue to be a living organ, thereby assuring that substantial justice will be attained in each case. It is the considered opinion of this court that, under the facts of this case, to permit Dr. Crunden to cross-examine the plaintiffs' witnesses and to deny him the opportunity of presenting an opening and closing statement at the impending trial are thoroughly consistent with substantial justice.
An appropriate order may be submitted in accordance with the text of this opinion.