226 N.J. Super. 244 (1988)
543 A.2d 1043
CONNIE GEORGIS, PLAINTIFF-RESPONDENT,
v.
JAMES RALPH SCARPA, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 13, 1988.
Decided July 6, 1988.
*247 Before Judges KING, GRUCCIO and D'ANNUNZIO.
Pancari, Zerella, Tedesco & Pancari, attorneys for appellant (Vincent J. Pancari, on the brief).
Davidow, Sherman & Eddowes, attorneys for respondent (David J. Eddowes, on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Defendant James Ralph Scarpa, Jr., appeals the denial of a motion to vacate a default judgment entered against him for $170,000. The issue is whether the drastic sanction of dismissal should be imposed upon defendant as a result of a 92-day delay in answering interrogatories. The underlying policy concerns the traditional conflict between judicial efficiency and substantive justice. Dismissal of defendant's answer because of the delay in answering interrogatories maintains calendar control yet deprives defendant of his day in court. We are concerned that trial courts may be striking an improper balance between calendar control and substantial justice.
*248 The procedural history is not in dispute. On December 18, 1985, plaintiff filed a complaint alleging that defendant assaulted her on November 1, 1985. Plaintiff sought compensation for serious injuries and resultant hospitalization and punitive damages for the willful, intentional conduct. Defendant's answer filed January 27, 1986, generally denied these allegations.
On March 13, 1986, plaintiff served interrogatories required to be answered in 60 days. R. 4:17-4(b). On notice dated June 9, 1986, plaintiff's attorney moved under R. 4:23-5 for an order striking defendant's answer for failure to answer the interrogatories; an ex parte order to this effect was filed June 10, 1986. After plaintiff entered default against defendant on July 21, 1986, the court fixed August 7, 1986, for a proof hearing and notice was mailed to defendant's attorney on July 28, 1986.
On August 6, 1986, defendant's newly-retained counsel requested postponement of the proof hearing so he could familiarize himself with the case. That request was granted. On October 10, 1986, defendant moved to reinstate his answer, alleged compliance with R. 4:23-5, and submitted the answers to the interrogatories. Additionally, defendant's attorney filed a supporting affidavit and brief indicating defendant answered the interrogatories on June 12, 1986, but defendant's former attorney never typed and forwarded the answers to plaintiff's counsel because of problems with that attorney's paralegal and inability to pay that attorney's retainer. Plaintiff argued that the motion was out of time pursuant to R. 4:23-5, the answers to interrogatories were not fully responsive and the problems between defendant and his former attorney should not be considered by the court. Defendant failed to timely answer interrogatories and therefore his pleadings were dismissed by order dated June 10, 1986. Defendant did not move to vacate that order within 30 days as required by R. 4:23-5. The delay of 92 days is calculated from July 10, 1986,[1] to October 10, *249 1986, the day defendant moved to reinstate his answer thereby responding to the June 10, 1986 order.
The motion to reinstate defendant's answer was heard November 7, 1986, and denied. The motion judge made no findings of fact nor conclusions of law. The letter opinion also barred defendant from participating in the proof hearing which was set before another judge, citing Fox v. Fox, 76 N.J. Super. 600 (Ch.Div. 1962). After the November 14, 1986 proof hearing, plaintiff was examined by a court-appointed physician. This procedure, ordered by the judge who conducted the proof hearing, is one which we commend in like situations. Following receipt of the medical report and consideration of plaintiff's testimony, a written decision was rendered and judgment was entered in the total sum of $170,000.
We first observe that the grant or denial of a motion for vacating a dismissal rests in the sound discretion of the trial judge. Zaccardi v. Becker, 88 N.J. 245, 251 (1982); Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 339 (1951). Appellate courts have generally declined to interfere with matters of discretion unless it appears that the trial judge has mistakenly exercised his discretion and an injustice has been done. Allegro v. Afton Village Corp., 9 N.J. 156, 160-161 (1952); Comeford v. Flagship Furniture Clearance Center, 198 N.J. Super. 514, 517 (App.Div. 1983).
The usual deference we pay to a trial judge's determination of a R. 4:50-1 motion is less compelling here, however, where the motion judge has made no findings to explain the reasons for denying the motion. Our review of the record indicates that the motion judge misconceived applicable law and, as a result, failed to consider appropriate factors. Because of this misconception, his exercise of discretion lacks foundation and becomes an arbitrary act, however conscientious. Kavanaugh v. Quigley, 63 N.J. Super. 153, 158 (App.Div. 1960). We must, accordingly, adjudicate the controversy in light of the applicable law.
Our review of the record reveals that the motion judge mistakenly opined that his choice was between imposing the *250 drastic sanction of dismissal of defendant's answer or imposing no sanction at all:
THE COURT: It may lack judicial efficiency but if we don't follow that rule  route then every time an attorney files an application to dismiss an answer or complaint for failure to answer interrogatories, and everytime the advisory [sic] comes in forty-five days late or sixty days late or ninety days late and says I had real problems getting the interrogatories out, we are going to set them aside, set the order aside, and start over.
....
That's always the problem in every single case, every time this issue arises the client deserves his day in court and in all due respect to the decisions that say that, the Court strains itself to run an efficient system and follow the rules. If every person is supposed [sic] to have their day in court, why do we have any rules?
Although R. 4:23-5 does not contain a list of possible sanctions, it
does not explicitly limit the power of the court to a choice between imposing the ultimate sanction of dismissal with prejudice or imposing no sanction at all. The purpose of the rule change was to force the delinquent party to move for a reopening of the case. Schlosser v. Kragen, 111 N.J. Super. at 343-44, and not to strip the court of the power to equitably adjust the controversy by less drastic sanctions when appropriate. [Zaccardi, 88 N.J. at 253 n. 3].
We are not insensitive to the legitimate concerns of the motion judge for compliance with discovery rules, but our first duty is to do justice. As we said in Santos v. Estate of Santos, 217 N.J. Super. 411 (App.Div. 1986), "[t]here is an absolute need to remember that the primary mission of the judiciary is to see justice done in individual cases. Any other goal, no matter how lofty, is secondary." Id. at 416.
The drastic sanction of dismissal should be imposed only sparingly. See Zaccardi, 88 N.J. at 253; Cunningham v. Rummel, 223 N.J. Super. 15 (App.Div. 1988); Santos, 217 N.J. Super. at 415; Audubon Volunteer Fire v. Church Const. Co., 206 N.J. Super. 405, 407 (App.Div. 1986). This ultimate sanction will normally be ordered only where no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party, or unless the actions of the party show a deliberate and contumacious disregard of the court's authority. Zaccardi, 88 N.J. at 253; Lang, 6 N.J. at 338; Johnson v. Mountainside *251 Hosp. Resp. Disease Assoc., 199 N.J. Super. 114, 119 (App.Div. 1985).
In Cunningham, 223 N.J. Super. at 19, we held that dismissal is not the sole remedy for violation of a discovery rule. The varying levels of culpability of delinquent parties justify a wide range of available sanctions against the party violating a court rule. Gnapinsky v. Goldyn, 23 N.J. 243, 247-248 (1957); see R. 4:23-2; R. 4:23-4. The sanction imposed depends upon the party's culpability. If a lesser sanction than dismissal suffices to erase the prejudice to the non-delinquent party, dismissal of the complaint is not appropriate and constitutes an abuse of discretion. Cunningham, 223 N.J. Super. at 20; Johnson, 199 N.J. Super. at 120.
Our review of the record also shows that throughout the proceedings, the motion judge was of the opinion that R. 4:23-5 could not be relaxed once the 30-day limit had expired. He said:
How did you get over the hurdle of the fact that default was entered on July 21 for failure to answer the Interrogatories and it wasn't a motion to reinstate the Answer within thirty days.
....
I want to know how you overcome as an attorney who got into the file after the thirty day period is over, the hurdle that the Rule provides that you can't reinstate a Complaint after thirty days.
....
The only thing I know about why the Answer  Interrogatories wasn't answered is some blanket allegation that Mr. Scarpa had an argument with ... [the attorney's] para-legal. What does that mean to the Court and how did that give Mr. Scarpa the right to come back before the Court and say that's excusable neglect, that's a mistake. I don't know how he overcomes the Rule.
....
But that's a Rule 4:50 application and there is a specific Rule that says you have to reinstate under 4:23-1 within thirty days by filing $50.00 fully responsive pleadings and serving the answers to Interrogatories.
....
The one date that you forgot though, was July 21st which is the date Mr. Eddowes filed his default. Now, how do you overcome Rule 4:23-1 and you still haven't told me how you are going to overcome it.
The motion judge's belief that R. 4:23 must be rigidly applied was misplaced. While vacation of dismissal is disfavored *252 if the delinquent party has failed to comply with the 30-day limit without having moved for an extension of time under R. 4:17-4(b), failure to move to vacate dismissal within the 30-day limit set for R. 4:23-5(a) does not by itself bar vacating the dismissal. Zaccardi, 88 N.J. at 251. The court has discretion to relax the 30-day limit to prevent injustice pursuant to R. 1:1-2, Zaccardi, 88 N.J. at 253 n. 3; Schlosser v. Kragen, 111 N.J. Super. 337, 345-346 (Law Div. 1970), or by the application of R. 4:50-1(f), which permits the court to relieve a party from the operation of an order to achieve essential fairness. See Hodgson v. Applegate, 31 N.J. 29, 43 (1959); Tenby Chase Apartments v. N.J. Water Co., 169 N.J. Super. 55, 59-60 (App.Div. 1979).
To determine whether the rules should be relaxed, several important factors should be considered by a trial court, including: (1) the extent of the delay; (2) the underlying reason or cause; (3) the fault of the litigant, and (4) the prejudice that would accrue to the other party. Jansson v. Fairleigh Dickinson University, 198 N.J. Super. 190, 195 (App.Div. 1985). The decision to vacate an order pursuant to R. 4:23-5, requires a two-step analysis. The judge must first examine the case in light of the factors set forth in Jansson. Then he must determine whether the ultimate sanction of suppression or dismissal is appropriate or whether a less drastic sanction is more equitable in light of the circumstances of the case.
The record here clearly demonstrates the failure of the motion judge to examine the case in light of the criteria articulated in Jansson. Applying these factors to this case, the record discloses that the delay in seeking to reinstate the complaint is at most 92 days from the expiration of the 30-day period until the date of the motion to vacate. This delay is not excessive when compared to existing case law. Compare Jansson, 198 N.J. Super. at 193 (three-year delay); Comeford, 198 N.J. at 516 (10-month delay); Schlosser, 111 N.J. Super. at 339 (25-month delay).
*253 The motion judge expressed dissatisfaction with the "blanket allegation" that the interrogatories were not answered because of a problem between defendant and his former attorney's paralegal. He did not permit brief testimony to evaluate the validity of defendant's application, even though defendant was present in court with his attorney. As a result, the underlying reason for the delay remains uncertain.
We cannot determine from this record that defendant demonstrated a deliberate and contumacious disregard of the court's authority necessary to warrant the ultimate sanction of suppression of his answer. The only indication of willful behavior on the part of defendant is his asserted lack of responsiveness to the interrogatories propounded. We agree with plaintiff that a number of these answers appear to be non-responsive. We are disinclined to hold that failure to supply fully responsive answers to interrogatories, standing alone, warrants the ultimate sanction of dismissal, especially at the early stage of pretrial proceedings, absent an order to compel more specific answers pursuant to R. 4:23-1.
We recognize some dereliction by defendant in his defense of this action. His conduct was less than commendable. But with due regard for the equities, we think the suppression of defendant's answer under these circumstances is too drastic, especially where such action deprives defendant of an adjudication on the merits and involves exposure to substantial liability.
The record also reveals the judge's failure to examine the extent to which plaintiff would be prejudiced as a result of the delay in answering interrogatories. Economic loss alone will not warrant a dismissal of defendant's answer. Compensation of a party for losses or expenses incurred is the appropriate remedy. R. 4:23-4. Thus, to avoid economic injustice, the court can require a party to pay any additional expenses resulting from the delay, such as the cost of the proof hearing.
[I]n Audubon Volunteer Fire v. Church Const. Co., 206 N.J. Super. 405, 407 (App.Div. 1986), we pointed out many ways short of dismissal or default to deal with problems of calendar control. We clearly indicated:

*254 Until courts have exhausted means of performing their shepherding function which do not terminate or deeply affect the outcome of a case, they ought not to bar a litigant's way to the courtroom.
[Santos, 217 N.J. Super. at 415].
Our primary focus in the administration of justice is the delivery of quality justice; the elements of which are: (1) adequate pretrial preparation and a fair trial, which in effect is due process; (2) expeditious disposition, and (3) economically effective operation. The court must balance these elements and never favor the latter two above the first, fair play.
The sparse record before us is not completely informative respecting the cause of the delay, the fault or blamelessness of defendant, or the actual prejudice, if any, accruing to plaintiff as a result of the 92-day delay in answering interrogatories. We therefore remand the matter for further proceedings to ensure that these issues are carefully reviewed.
Should the motion judge, after a factual hearing and in light of what we have said, determine that only suppression of the answer will suffice to erase a finding of prejudice to plaintiff, the extent of defendant's participation at the proof hearing becomes an issue. Such participation is dependent upon defendant's course of conduct thus far and the nature of plaintiff's action. See Scott v. Scott, 190 N.J. Super. 189, 195 (Ch.Div. 1983).
For example, in an action for the possession of furniture, defendants were not permitted to participate in the taking of plaintiff's proofs nor were they allowed to cross-examine. Fox, 76 N.J. Super. at 604. Instead, they were limited to argument that the proofs were insufficient in fact or law. In Fox the court reasoned that while the issues were simple, there may be situations where it is within the court's sound discretion to allow cross-examination or counter-proofs in order to get assistance in evaluating plaintiff's claim. However, Fox was not such a case.
Consistent with this reasoning, the trial court in Perry v. Crunden, 79 N.J. Super. 285, 292 (Cty.Ct. 1963), permitted cross-examination *255 of plaintiff's witnesses in a medical malpractice suit "due to the complexity of the issues to be tried, the prospective proofs and testimony to be adduced and defendant's potential exposure to liability." Cross-examination in such a case would perhaps aid the judge or jury in the determination of both liability and damages.
We are satisfied that defendant should not be prevented from participating in the proof hearing, at least to the extent of cross-examination of witnesses, since cross-examination will aid the judge at the proof hearing in his careful scrutinization of the evidence in the search for truth. Here, defendant's exposure is considerable, whereas in Fox, not only was the potential exposure limited to the value of the furniture and household equipment, but the damages were much more readily ascertainable.
In this case, the issues with respect to the amount of damages and the actual injuries sustained in the alleged assault are complex. The testimony of expert witnesses appears necessary to evaluate these issues. Defendant alleges that plaintiff was involved in an accident one-and-one-half years before the alleged assault by him and sustained injuries in that accident which are causally connected to the injuries plaintiff now contends are the result of the assault. We, of course, do not know the extent or effect, if any, of these alleged prior injuries. Therefore, the judge must decide not only the question of damages, as in Fox, but also whether defendant is liable for all the injuries plaintiff now contends resulted from the assault.
To decide plaintiff's claim properly, cross-examination by defendant as to the extent of injuries sustained in both the accident and the assault, the causal connection between the injuries sustained in the assault and the damages alleged, the qualifications of plaintiff's experts and the facts relied upon in forming the basis of the experts' opinion must all be explored. Cross-examination clearly assists in the search for truth.
In determining the extent to which counsel for a defaulting party may participate, the court might well ask itself the question  Can counsel for the defaulting defendant make any material contribution in aiding the triers of the *256 facts in their search for the truth? The reply to this question can be found in 5 Wigmore, Evidence (3d ed. 1940), § 1367, at pages 28 and 29, where Professor Wigmore had the following to say with respect to the contribution cross-examination makes in establishing where the truth lies:
"For two centuries past, the policy of the Anglo-American system of Evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. * * *"
* * * it [Cross-examination] is beyond any doubt the greatest legal engine ever invented for the discovery of truth." (Emphasis added). [Perry, 79 N.J. Super. at 292].
For these reasons, defendant is entitled to cross-examination of plaintiff's witnesses at the very least, "for no one who withholds evidence can be in any sense a fit object of clemency or protection." Scott, 190 N.J. Super. at 196, citing 2 Wigmore on Evidence § 291 at 186.
We reverse the order denying defendant's motion and remand for action consistent with this opinion.
Reversed and remanded.
NOTES
[1] July 10, 1986 is 30 days after the June 10, 1986 order. See R. 4:23-5.