**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2441-22

ROBERT SMITH,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

NORTH JERSEY TRUCK
CENTER, INC.,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Submitted September 24, 2024 – Decided October 17, 2024

      Before Judges Gilson, Firko, and Augostini.

      On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1824-20.

      Law Office of Howard A. Gutman, attorneys for appellant/cross-respondent (Howard A. Gutman, on the briefs).

      Price, Meese, Shulman & D'Arminio, PC, attorneys for respondent/cross-appellant (John R. Edwards, Jr., on the briefs).

PER CURIAM

This appeal involves a dispute between plaintiff Robert Smith and defendant North Jersey Truck Center, Inc., concerning the condition of a Freightliner truck plaintiff leased from defendant. Plaintiff claims defendant misrepresented the truck's condition, which had numerous defects. Plaintiff filed a complaint in the Law Division alleging violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, contending he was misled about the truck's condition. Plaintiff also asserted claims of breach of contract; breach of express and implied warranties; and violations under the Magnuson-Moss Warranty-Federal Trade Commission Improvements Act (Magnuson-Moss Act). 15 U.S.C. §§ 2301-2312. Plaintiff's complaint included a jury demand. Defendant filed an answer and affirmative defenses.

On January 9, 2023, the case was scheduled for trial, following denial of defendant's motion for summary judgment. At the onset of trial, the trial court found neither party had submitted trial briefs, proposed voir dire questions for the jury, or proposed jury instructions as required by Rule 4:25-7(b) and Appendix XXIII of the Court Rules. The trial court summarily ruled that these failures waived plaintiff's right to a jury trial and entered a memorializing order

that day denying the trial by jury. The matter was then immediately tried as a bench trial.

Following the bench trial, the trial court determined that plaintiff failed to establish: common law fraud, unconscionable practices under the CFA, or prove any of the allegations in the complaint. The trial court dismissed the complaint with prejudice. Defendant moved for attorney's fees as the prevailing party pursuant to the terms of the leasing agreement entered between the parties. On February 17, 2023, a second trial court denied defendant's request for attorney's fees and entered a memorializing order. On March 7, 2023, a final judgment was entered dismissing plaintiff's complaint with prejudice and without costs.[1]

On appeal, plaintiff argues: (1) the elimination of a trial by jury was unjustified and contrary to existing law; (2) the right to a jury trial can only be waived through a deliberate and knowing act that did not occur; (3) the elimination of a trial by jury is not a routine or authorized sanction; (4) failure to submit a jury charge on a particular issue generally means relinquishment of the party's ability to challenge the language of the court's charge on that issue; (5) plaintiff's counsel submitted a jury charge before the trial began; (6) the

---

[1] The trial court judge retired in the interim, and the civil presiding judge entered the March 7, 2023 final judgment under review.

3 A-2441-22

sanction was severely unbalanced; (7) there was no record of prior problems or wrongful conduct justifying sanctions; (8) there is already a CFA jury charge; (9) there are similar voir dire issues; and (10) the trial court's factual findings under the CFA did not support its conclusions of law.

Defendant seeks affirmance and contends that if there was error in denying plaintiff a jury trial, it was harmless. Defendant also cross-appeals from the February 17, 2023 order denying its application for counsel fees.

We conclude the trial court abused its discretion in sanctioning plaintiff by proceeding as a bench trial instead of a jury trial. Therefore, we vacate the March 7, 2023 final judgment, reverse, and remand for a jury trial on all issues and reinstate the complaint. We also vacate the February 17, 2023 order denying defendant's application for counsel fees and dismiss defendant's cross-appeal as moot.

I.

The record reveals the following relevant facts, allegations, and procedural history. On March 31, 2016, plaintiff leased a used truck from defendant with 615,487 miles of use. The parties signed a "lease" agreement; however, plaintiff alleges that he "purchased" the truck, and the CFA claims

4

arose out of defendant's misrepresentation of the truck's condition and "a confusing and contradictory set of purchase documents."

The front page of the leasing agreement provides a notice to plaintiff that payment was due on the fifteenth day of each month beginning in May 2016, payable to Moretran Leasing Corporation (Moretran). Plaintiff was advised by defendant that he would receive a monthly invoice.

The lease agreement states plaintiff as "[l]essee," "hereby rents and leases from [defendant] the equipment described in this agreement." Article [f]our of the lease states, "[Plaintiff] ha[d] inspected the equipment, agree[d] that it is in good and proper working condition and accepts it 'as-is' 'where is' and in its present condition." Plaintiff had twenty-four hours to inspect the truck and notify defendant of any defects. The lease agreement also states that defendant made no warranties as the truck was accepted "as-is."

Under article six, the lease agreement states, "[plaintiff] shall indemnify and hold [defendant] harmless from any liability, . . . including attorney's fees, which [defendant] may suffer or incur as a result of any claims which may be made . . . [by] [plaintiff] . . . that arise out of . . . performance, use, operation, possession . . . ."

5

The lease agreement further states that the [truck] "is, and at all times shall be and remain, the sole and exclusive property of [defendant]" and explicitly states it was "not a sale." In addition, the lease agreement also provides "[plaintiff] [would be responsible for] any costs, expenses, fees and charges incurred in connection with the use and operation of" the [truck] . . . . The lease agreement was initialed on each page and signed by plaintiff and defendant.

Under the "Used Truck Limited Warranty" section, the lease agreement states that the truck was "[s]old 'As is, Where Is' [e]xcept for a [thirty] day – 50/50 Warranty on Engine, Transmission, and Rear." The warranty is limited "specifically [to] the internal parts of the engine, transmission and rear axle, subject to exclusion[s][], against failure for a period of [thirty] days from date listed, . . . ."

The record includes an earlier document dated March 17, 2016, entitled "Used Truck Sales Agreement." That document was signed by both parties and states, "[plaintiff] hereby agree[s] to purchase the truck from [defendant], under the terms and conditions specified." This earlier document states that the truck was being sold "as-is," and that "[defendant] shall not be obligated to sell until approval of the terms hereof by a responsible financing institution."

6

The March 17, 2016 document also states that it will not become binding until "accepted by [defendant] in writing and in the event of time sale" and is "not binding unless accepted by authorized manager of [defendant]." This document was ostensibly signed by a salesperson, who was not a manager.

According to defendant, "these documents must be clearly read as first the non-binding proposal for sale, then respectively [a] binding lease agreement with a limited warranty." On March 31, 2016, the parties entered an "addendum to lease agreement," which contains a purchase option.

On December 16, 2016, Moretran sent plaintiff a letter advising him that he was in default of the lease agreement as a result of non-payment. On January 4, 2017, Moretran sent plaintiff a letter advising the truck was repossessed "due to contractual default." The letter indicated "the lease needs to be paid in full within [fifteen] days should you wish to keep the vehicle," and the amount owed was $28,632.24.

However, in support of its claim that the transaction was a "lease agreement," and not a sale, defendant provided a complaint[2] from an earlier Law Division lawsuit between the parties. On December 19, 2016, plaintiff, as a self-represented litigant, alleged in his complaint that on April 10, 2016, he

_____

[2] Docket number L-8878-16.

"purchased" a "2009 Freightliner tractor trailer" from defendant and "began doing paperwork" to finance the truck "based on a twenty-four-month term."

Plaintiff maintained that a week later, the truck had an "oil leak" and problems with the "exhaust system," a "smoking brake chamber," and a "busted fuel line." He claimed defendant's representative advised him there was "no prior paperwork on the truck." Plaintiff alleged he contacted defendant's owner and explained he was sold a "lemon" from his company. Plaintiff alleged that as a result of defendant's actions, he suffered damage to his "reputation," a "financial hardship," and "emotional distress." Defendant obtained a default judgment against plaintiff on its counterclaim in that action for his failure to file an answer. On June 1, 2017, final judgment was entered in favor of defendant and against plaintiff in the amount of $28,632.24.

On March 16, 2020, plaintiff filed the complaint, which is the subject of the matter under review. In this complaint, plaintiff alleged defendant's salesperson stated, "[t]he truck is in mint condition" and had not been involved in any accidents. According to plaintiff, the truck sustained "severe and substantial damage in prior accidents[,] which defendant knew and concealed." Plaintiff alleged the truck was sold "in a dangerous and defective condition." After acquiring the truck, plaintiff alleged the following mechanical problems

developed: an oil leak, exhaust system failure, and a brake line failure causing a gas leak. Plaintiff alleged the estimated cost for repairs was over $16,000.00.

Plaintiff averred the truck's problems caused him to "suffer[] substantial financial loss and tremendous stress[,] which impacted his marriage" because he was "unable to perform his work and lost the ability" to use the truck. Plaintiff alleged he contacted defendant on "multiple occasion[s]" about the mechanical problems, but it "refused to repair or replace" the truck.

Plaintiff sought compensatory damages, punitive damages, and "a refund of the full purchase price" of the truck. The complaint included a demand for a jury trial.

In its answer, defendant denied its salesperson represented a "seven-year-old commercial truck with 615,487 miles" was in "mint condition." Defendant claimed that "approximately nine months and twelve thousand miles after purchasing the [truck]," plaintiff brought it to defendant and received a repair estimate of "approximately $16,000.00." Defendant also claimed plaintiff's complaint was barred by the doctrine of laches because he "waited three years after his case was dismissed to pursue litigation."

Prior to trial, defendant moved for summary judgment on the basis that discovery was closed, and plaintiff had not served an expert report or any

competent evidence to establish any wrongdoing by defendant. Plaintiff opposed the motion, arguing defendant misrepresented or failed to disclose that the truck was involved in prior accidents.

The motion court denied defendant's motion, finding that "[p]laintiff's allegations of fraud raise questions of fact[,] which are not [resolved] by writings between the parties." The motion court held the January 5, 2018 order entered under docket number L-8878-16 permitted plaintiff to file his claims "as all claims and counterclaims in that action were dismissed without prejudice in their entirety."

When the trial commenced on January 9, 2023, the trial court confirmed it had received defendant's motion in limine seeking to bar plaintiff from presenting expert testimony at trial, but "pretrial submissions ha[d] [not] been submitted as was required." The trial court asked plaintiff's counsel where the jury charges were, and plaintiff's counsel confirmed the jury charges had not been submitted in his pre-trial exchange.

The trial court told plaintiff's counsel, "you're here for trial. You're not getting a jury trial because you did not submit any . . . jury charges, you did not submit any voir dire questions, you didn't do any of the things that you were supposed to do. So now your jury trial is waived." The trial court added, "there

10

is a question as to whether there was a breach of contract or not. Whether there's enough evidence for fraud or consumer fraud seems to be, at this point, woefully deficient." Plaintiff's counsel strenuously maintained, "I want to state as clearly . . . and as powerfully as I can that we do not waive our right to trial by jury. [Plaintiff] did not authorize . . . to waive the trial by jury."

Plaintiff's counsel argued that it seemed inappropriate to sanction his client by taking away his right to a jury trial because of the late pre-trial submissions. The trial court ruled that since both parties failed to file what they were supposed to, "a jury trial is waived." The trial court explained that prior to a jury trial, there are rules . . . such as having jury questions, conference before the examination, voir dire of potential jurors, and stated that "none of the requirements for a jury trial were even merely met in this case." The trial court acknowledged that everyone knew that this was a trial date, and stated to "be able to charge diverse issues which are not only breach of contract, but you have common law fraud and [CFA] without any of those charges is folly."

During a break in the proceedings, at approximately 12:45 p.m. before the start of the trial, plaintiff submitted a proposed jury charge based on Model Civil Jury Charge 4.43—the CFA charge—and a trial brief.

11

On January 9, 2023, plaintiff filed an emergent application with this court seeking to stay the trial. On January 10, 2023, we granted plaintiff's emergent application but denied his request for a stay. Thus, the two-day bench trial proceeded on January 9 and 10, 2023. The trial court's decision was rendered before this court had an opportunity to adjudicate plaintiff's emergent application, thereby rendering it moot.

The trial court considered the testimony of plaintiff, his wife, and a representative employed by defendant. Immediately after hearing counsels' summations, the trial court found that plaintiff failed to prove by a preponderance of the evidence any of [his] causes of action. The trial court concluded there was "no evidence . . . that . . . defendant knew anything other than [it] had a truck, and . . . [was] selling it, and [defendant] had no knowledge of any of the purported problems." The trial court also found there were two separate warranties—a limited thirty-day warranty and a warranty in the lease agreement stating the truck was being sold "as-is."

Defendant subsequently moved for attorney's fees, which was considered by a second trial court. On February 17, 2023, the second trial court denied defendant's motion for attorney's fees, finding the matter was "tried to completion" before the first trial court, and any such application "should have

12

been made at the time of trial." A memorializing order was entered. This appeal followed.

Plaintiff primarily argues on appeal that the first trial court unfairly deprived him of a right to a jury trial, brushed aside his jury request, and did not afford his attorney a fair chance to remedy his deficient pre-trial submission. According to plaintiff, partial pre-trial disclosure statements were submitted by both parties, but neither party submitted proposed jury voir dire questions or jury charges. Plaintiff requests that the evidence and results of the bench trial be vacated, and the case remanded for a new trial, this time before a jury.

In opposition, defendant counters that even if there was error in proceeding with a bench trial, it was harmless.

II.

It is well established that waiver is a "voluntary relinquishment of a known right" evidenced by a clear, unequivocal, and decisive act from which an intention to relinquish the right can be based. Sroczynski v. Milek, 197 N.J. 36, 63-64 (2008) (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). At times, a waiver may be implied by conduct or acquiescence. Guber v. Peters, 149 N.J. Super. 138, 140 (App. Div. 1977) (holding that the defendants had waived their

right to a jury trial requested in their initial pleadings by failing to press that right to the court thereafter).

"[A] trial court has an array of available remedies to enforce compliance with a court rule or one of its orders." Williams v. Am. Auto Logistics, 226 N.J. 117, 124 (2016). In determining the appropriate sanction for failing to abide by an order or rule, a "court must . . . carefully weigh what sanction is the appropriate one." Williams, 226 N.J. at 125. In its selection of a sanction, a court must consider the "varying levels of culpability of delinquent parties." Georgis v. Scarpa, 226 N.J. Super. 244, 251 (App. Div. 1988).

Article I, Paragraph 9 of the New Jersey Constitution provides that "[t]he right of trial by jury shall remain inviolate." This provision, added in 1947 when the New Jersey Constitution was adopted, "guarantees the right to trial by jury as it existed at common law." In re Env'tl. Ins. Declaratory Judgment Actions, 149 N.J. 278, 291 (1997). The right to a jury trial "attaches in legal, but not equitable actions." Ibid.

The court must "look to the historical basis for the cause of action and focus on the requested relief" to determine whether a case is primarily legal or equitable. Weinisch v. Sawyer, 123 N.J. 333, 343 (1991). See also Shaner v. Horizon BanCorp., 116 N.J. 433, 450-51 (1989) ("We consider the nature of the

underlying controversy as well as the remedial relief sought in determining whether the cause of action has been historically primarily equitable or legal in nature."). Thus, "the right to a trial by jury in New Jersey must arise under either a statute or the state Constitution." Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 141 (2015) (quoting In Re Env't Ins. Declaratory Judgment Actions, 149 N.J. at 292).

Here, the trial court reasoned that the parties' failures to submit proposed jury voir dire questions and proposed jury instructions waived plaintiff's right to a jury trial. This constituted error and an abuse of discretion.

Plaintiff's counsel contends that he had to deal with "extraneous family circumstances" and was unable to prepare a jury charge, but it was submitted before trial began. Plaintiff's counsel urges us to consider there was no clear and deliberate waiver of a trial by jury, as demonstrated by his emergent application to this court. In addition, plaintiff's counsel argues the inability to have a trial by jury violated plaintiff's due process rights and "fair opportunity to be heard." He also asserts the sanction was severely unbalanced and "draconian" because there were no prior problems or wrongful conduct on his part.

Rule 4:35-1(d) provides that, once a demand for a jury trial has been made, the case must be tried to a jury unless all parties consent or the court finds that no jury trial right exists. Specifically, the Rule states:

> When trial by jury has been demanded as provided by this rule the trial of all issues so demanded shall be by jury, unless all parties or their attorneys, by written consent and filed stipulation or oral stipulation made in open court and entered on the record, consent to trial by the court without a jury, or unless the court on a party's or its own motion finds that a right of trial by jury of some or all of those issues does not exist.
>
> [Ibid.]

Plaintiff was entitled to a jury trial on all causes of action pled in his complaint. Under Rule 4:35-1(d), the trial court had no power to deprive plaintiff of a jury trial without his consent. Moreover, we conclude the trial court abused its discretion by sanctioning plaintiff for not providing his pre-trial exchange by waiving his right to a jury trial.

Rule 4:25-7(b) provides "in cases that have not been pretried, attorneys shall confer and, seven days prior to the initial trial date, exchange the pretrial

information as prescribed by Appendix XXIII[3] to these rules."  Subsection (b)

specifically states:

> At trial and prior to opening statements, the parties shall submit to the court the following in writing:  (1) copies of Pretrial Information Exchange materials that have been exchanged pursuant to this rule, and objections made thereto; and (2) stipulations reached on contested procedural, evidentiary, substantive issues. In addition, in jury trials, the parties shall also exchange and submit (1) proposed voir dire questions, (2) a list of proposed jury instructions pursuant to R[ule] 1:8-7, with specific reference either to the Model Civil Jury Charges, if applicable, or to applicable legal authority, and a proposed jury verdict form that includes all possible verdicts the jury may return.  Failure to exchange and submit all the information required by this rule may result in sanctions as determined by the trial judge.

The trial court was correct in ruling that both counsel were obligated to

comply with Rule 4:25-7(b) and Appendix XXIII and failed to do so.  However,

we hold the trial court abused its discretion in waiving plaintiff's right to a jury

---

[3]  Appendix XXIII provides that parties must provide to opposing counsel "[a] list of all witnesses . . . to be called in the party's case in chief"; "[a] list of all exhibits to be offered in the party's case in chief"; "[a] list of any proposed deposition or interrogatory reading(s) by page and line number or by question number"; "[a]ny in limine or trial motions intended to be made at the commencement of trial"; and "[a] list of all anticipated problems with regard to the introduction of evidence in each party's case in chief . . . ."  Pretrial Information Exchange, Pressler & Verniero, Current N.J. Court Rules, Appendix XXIII to R. 4:25-7(b), www.gannlaw.com (2025).

A-2441-22

trial as a sanction for not complying with Rule 4:25-7(b) and Appendix XXIII. Moreover, plaintiff's counsel did submit—belatedly—a proposed jury charge and a trial brief. In making this ruling, we do not condone either counsel's disregard of the Court Rules, which were designed to advance the efficient administration of justice and to prevent unfair surprise at trial.

Rule 4:25-7(b) also serves to give the trial court a roadmap to preside over the trial proceedings in a thorough and efficient manner. In many instances, we are mindful that a trial court is assigned a case to preside over following a calendar call having no prior involvement and no familiarity with the matter. Therefore, compliance with Rule 4:25-7(b) and Appendix XXIII is mandated. Here, the first trial court could have imposed other sanctions for counsels' failure to comply with Rule 4:25-7(b) and Appendix XXIII instead of depriving plaintiff of his right to a jury trial.

Defendant's argument that the error is harmless is unavailing. "Failure to grant a constitutionally guaranteed right of a jury trial is not amenable to the harmless error rule." IMO Indus., Inc. v. Transamerica Corp., 437 N.J. Super. 577, 631 (App. Div. 2014) (citing 500 Columbia Tpk. Assocs. v. Haselmann, 275 N.J. Super. 166, 171 (App. Div. 1994)). Given the constitutional violation here, a new trial by jury is warranted.

In light of our decision to reverse and remand for a new trial by jury, we need not address plaintiff's arguments pertaining to the trial court's factual findings on the CFA, his other claims, and conclusions of law. The cross-appeal concerning attorney's fees is also mooted by our decision and remand.

Reversed, vacated, and remanded for a new trial by jury on all issues. The complaint is reinstated. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19