**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1905-19

A.M.S.[1],

      Plaintiff-Appellant/
      Cross-Respondent,

v.

M.L.S.,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Argued April 28, 2021 – Decided July 29, 2021

      Before Judges Vernoia and Enright.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-1279-17.

      Michael Confusione argued the cause for appellant/ cross-respondent (Hegge & Confusione, LLC, attorneys; Michael Confusione, of counsel and on the briefs).

---

[1] We use initials to preserve confidentiality in accordance with R. 1:38-3(d).

Susheela Verma argued the cause for respondent/cross-appellant (Law Offices of Susheela Verma, attorneys; Susheela Verma and Andrea M. Beckford, on the briefs).

PER CURIAM

In this matrimonial matter, plaintiff A.M.S. appeals from the December 3, 2019 denial of her motion to vacate an October 12, 2018 post-judgment order of equitable distribution. Defendant M.L.S. cross appeals from the denial of his counsel fee request under the latter order. We reverse the challenged provisions of the December 3, 2019 order, vacate the October 12, 2018 order, and remand for further proceedings.

I.

The parties were engaged in October 2014, married in a religious ceremony in India in December 2015, and they solemnized their union in a civil ceremony in the United States on January 13, 2016. No children were born of the marriage.

The parties' relationship quickly deteriorated during the nascent stage of their marriage. In November 2016, due to a physical altercation with defendant's family, plaintiff obtained a temporary restraining order against defendant, his parents, and his sister. Plaintiff retained counsel, filed for divorce in December

2016, and obtained final restraining orders (FROs) against defendant and his sister.[2]

Soon after she filed her divorce complaint, plaintiff relocated to India, purportedly to care for her ill mother. She contends that while she was out of the country, she "fell very sick and was diagnosed with [post-traumatic stress disorder (PTSD)] and suffered with anxiety and depression. [She] took a leave of absence from . . . work and . . . remained in India." According to plaintiff, she was under the care of four doctors and on leave from her job until April 2017, but because her doctors did not clear her for work, her employer terminated her. Defendant argues plaintiff was not seriously ill, as evidenced by some of her posts on social media, and that she was terminated from her job for "gross misconduct" involving credit card theft from her employer.

Divorce proceedings continued while plaintiff was in India, but she failed to participate in the discovery process, appear for scheduled court events, or file a case information statement (CIS). In May 2017, defendant's counsel wrote to the trial court and requested that an upcoming proceeding be adjourned due to plaintiff's counsel's representation it was "unlikely" plaintiff would appear in

_____

[2] The record reflects the FROs were subsequently dismissed upon defendant's application.

3

court since she remained in India and "want[ed] this case to be placed on an inactive list." Plaintiff's counsel also advised defendant's attorney he was "having difficulty . . . obtaining information from [plaintiff]." Plaintiff did not appear on the rescheduled date of the court event nor did she file a CIS throughout the proceedings. On July 25, 2017, the trial court entered an order providing that if plaintiff failed by August 4, 2017 to file a CIS and confirm defendant was covered under her health insurance plan through work, her complaint for divorce would "be dismissed upon Defendant filing an Affidavit of Non-Compliance, with a copy being sent to Plaintiff."[3] The July 25 order did not specify plaintiff's complaint would be dismissed "with prejudice."

Plaintiff's attorney successfully moved to withdraw from the case in August 2017, claiming plaintiff had breached the terms of their retainer agreement by neglecting to pay his fees on a timely basis and failing to

---

[3] Under Rule 4:23-2, if a party fails to provide court-ordered discovery, the court may issue "such orders in regard to the failure as are just," including orders "striking [the] pleadings . . . or dismissing the action . . . with or without prejudice[.]" R. 4:23-2(b). Although the sanction of dismissal under that Rule "is drastic and . . . generally not to be invoked[,]" a court may do so "in those cases in which the order for discovery goes to the very foundation of the cause of action, or where the refusal to comply is deliberate and contumacious." Abtrax Pharm. v. Elkins-Sinn, Inc., 139 N.J. 499, 514 (1995) (quoting Lang v. Morgan's Home Equip. Corp., 6 N.J. 333, 339 (1951)).

4

"effectively communicate and cooperate" with him to "move her case along." On September 27, 2017, the trial court "ordered a default [to be] entered against . . . plaintiff and . . . plaintiff's complaint vacated." The September 27 order did not reflect that plaintiff's complaint was vacated or dismissed "with prejudice."[4]

On December 7, 2017, the trial court entered a final default judgment of divorce (JOD) against plaintiff.[5] The JOD reflected that equitable distribution, along with "fees and other issues . . . shall be determined at a later date." That same day, the court separately ordered restraints against the dissipation of certain accounts in plaintiff's name "individually, or with others,"[6] as well as any "lockers" maintained by her, and because plaintiff was still unrepresented,

---

[4] Pursuant to Rule 5:5-10, in matrimonial litigation involving issues of equitable distribution, as well as child support and alimony, "[d]efaults shall be entered in accordance with Rule 4:43-1, except that a default judgment . . . may be entered without separate notice of motion as set forth in Rule 4:43-2." Rule 4:43-1, in turn, requires that the entry of default be predicated on a party's "fail[ure] to plead or otherwise defend . . . or if the answer has been stricken with prejudice." (Emphasis added).

[5] The JOD erroneously reflects "the parties were legally married . . . on January 13, 2013 in a civil ceremony."

[6] Although the parties were divorced by a final JOD on December 7, 2017, this second order from December 7 mistakenly provides that the restrained "funds and assets shall remain with these Financial Institutions until the issuance of [a] Final [JOD] in this matter when the assets shall be disbursed as per the Final [JOD]." (Emphasis added).

A-1905-19

it authorized defendant to utilize four physical addresses in the United States and India, as well as two email addresses, to serve plaintiff with legal documents.

In August 2018, defendant filed and served plaintiff with a "notice of a proposed final judgment as to equitable distribution," (NED) pursuant to Rule 5:5-10. In his NED, defendant proposed, in part, that neither party should pay the other spousal support, he should exclusively retain the marital residence, a Mercedes Benz and BMW, and plaintiff should reimburse him for out-of-pocket health costs incurred after her employment-related health insurance coverage was terminated. He also requested counsel fees, a share of bonus monies paid to plaintiff during the marriage, a credit for certain premarital debt allegedly incurred by plaintiff and paid down during the marriage, each party retain his or her own bank accounts, and that he be permitted to close out all joint accounts.

On October 12, 2018, after a brief hearing, the trial court entered its equitable distribution order. The six-page transcript from this proceeding reveals that neither party nor defendant's counsel appeared for the proceeding,

A-1905-19

and the court made no reference to defendant's CIS when addressing his NED requests.[7]

The October 12 order reflects the court "considered the papers filed" by defendant, and "for good cause shown," it awarded him the bulk of the relief he requested, including: (1) the marital home, finding defendant purchased it before the marriage with premarital funds; (2) title to both vehicles; (3) a credit for plaintiff's "depreciation of the BMW" totaling over $27,000; (4) plaintiff's 401k plan valued at almost $35,000, as a credit "for items taken from the defendant"; and (5) a $2770 credit for unreimbursed medical expenses defendant incurred "due to plaintiff's termination of health insurance in violation of Court Order." The judge denied defendant's counsel fee request for lack of compliance with Rules 4:42-9 and 5:3-5, as well as his failure to "address[] the issues of [Rule of Professional Conduct (RPC)] 1.5." Subsequently, the judge denied defendant's motion to amend the October 12 order to include a credit for jewelry defendant claimed plaintiff retained.

---

[7] Pursuant to Rule 5:5-10, a party filing a Notice for Final Judgment "shall annex to the Notice a completed and filed [CIS]." The record reflects defendant filed his CIS in December 2016 and that he represented his NED, "together with [his CIS] . . . are being filed with the Clerk . . . and shall be available for examination . . . . The same is being served upon the Plaintiff through the Alternate Means of Communication as permitted by . . . Court Order."

Several weeks after the judge executed the October 12 order, plaintiff wrote to him, stating that when she returned from India earlier that year, she was "shocked to know that [her attorney] had withdrawn from [the] case but failed to send [her] a notice of his motion to withdraw." Plaintiff further represented her attorney was "aware of [her] sickness and was to update the court and keep this case on hold" until she "recuperated and returned to New Jersey." She informed the court she was "extremely sick" due to the domestic violence "perpetrated" against her during the marriage, and that her "deathly sick" mother took care of her in India, which "worsened [plaintiff's] physical and emotional health." She also stated she "was under the impression that [her] case was on hold in the court" and she "never received any notice of the Default [JOD]."

On October 10, 2019, plaintiff's successor attorney timely filed a Rule 4:50-1 motion to vacate the October 12, 2018 order. Additionally, plaintiff requested counsel fees, permission to assume a different surname, and that defendant be ordered to produce financial and other discovery from the date of the parties' engagement to the entry of the October 12 order.[8] She certified the

---

[8] Plaintiff does not challenge the subsequent denial of her name change or counsel fee request, so we do not address these issues for purposes of this appeal.

equitable distribution order should be set aside because defendant failed to serve her with the December 2017 default JOD or his NED. She also argued her lack of participation in the divorce proceedings was attributable to "excusable neglect" arising from the significant health issues she experienced after separating from defendant. Also, she contended the October 12 order should be set aside because defendant made a series of misrepresentations to the court regarding the parties' assets and liabilities. For example, she certified defendant's

> assertion[] that the [former marital residence] was bought from [his] pre-marital funds is false. His parents, as promised at our engagement, gave us $100,000 in cash for the down payment for the house as a joint engagement/wedding gift to both of us. This cash was deposited by [d]efendant in his individual TD Bank Account wherein he had also deposited the $51,000 cash gift from my parents to us from our engagement. The deposit for the house purchase of $10,000 and the balance of $94,527.90 paid at closing was paid from [d]efendant's individual TD Bank Account because all the gift monies [were] deposited into that account . . . . <u>Defendant must be Ordered to provide full and complete TD statements from October 2014 so that the court can see cash deposited.</u>

Plaintiff further stated she was entitled to an "equitable share of the marital home . . . purchased with our joint monies and in contemplation of marriage," explaining defendant "went and closed on the house without me . . .

9 <span>A-1905-19</span>

[and] cleverly kept the Deed [in] his individual name and assured me that he would add me to the Deed when we returned from India after the wedding."  She also certified her salary "was the only salary going into [the parties'] joint Chase bank account and it was used to pay for the mortgage for [the] marital home; utilities; car and life insurance.  While I was paying the household expenses, my name was still not added onto the Deed. . . ."

Defendant opposed the motion to vacate and requested a counsel fee award, claiming that after plaintiff "abandoned her own case," his counsel served plaintiff with the NED at the physical and email addresses authorized by prior court order.  Defendant also denied plaintiff was too ill to prosecute her case, and he presented her various social media posts in support of his position. He also argued her certification contained "false and baseless assertions" pertaining to the equitable distribution award.

On December 3, 2019, without eliciting testimony from the parties or conducting oral argument, the motion judge denied plaintiff's request to vacate the October 12, 2018 order and denied defendant's request for counsel fees.[9]

---

[9]  Rule 5:5-4 expresses a "strong presumption favoring argument on motions other than calendar matters and routine discovery applications."  Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 5:5-4 (2021).  Litigants should be permitted oral argument on such motions when requested "as a matter

The judge rendered his decision orally and found plaintiff "failed to inform the court" about her move to India, "failed to continue to prosecute [the] matrimonial action," and there was "no such thing as placing a matter on hold," despite her purported request to counsel. Further, the judge determined "plaintiff's assertion that . . . she did not know about the proceedings, that she thought it was put on hold, simply does not ring true with the processes that [were] necessary . . . by the defendant to move the matter forward." The judge added, "ultimately, the service on friends, acquaintances of the plaintiff, that's the best that was able to be done and accordingly I don't find that the plaintiff has met the burden of showing that there's been mistake, inadvertent surprise or excusable neglect." The judge further determined "the actions by the plaintiff were willful in failing to comply with the court and move the matrimonial case forward in a reasoned fashion according to court rules." After briefly identifying

---

both of due process and the appearance of due process." Filippone v. Lee, 304 N.J. Super. 301, 306 (App. Div. 1997). Here, we are convinced plaintiff's Rule 4:50-1 motion presented issues that could have benefited from further discussion at oral argument, and we discern no "special or unusual circumstances . . . warranting the court's dispensing with an entirely appropriate request for oral argument of a motion presumptively entitled to argument on request." Ibid.

other grounds upon which the October 12 order might be vacated under <u>Rule</u> 4:50-1,[10] the judge perfunctorily found no basis for vacating the order.

The judge also denied defendant's cross motion for counsel fees, despite finding defendant submitted a certification that complied with <u>Rules</u> 4:42-9 and 5:3-5, as well as RPC 1.5. The judge succinctly explained, "there's a number of factors to be considered and one of those is the ability of the parties to pay their own fees . . . [which is] more or less in equipoise and each party's responsible for their own counsel fees and costs."

---

[10] <u>Rule</u> 4:50-1 states that a court may relieve a party from a final judgment order for:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under <u>R</u>. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

12

II.

On appeal, plaintiff contends "[t]he trial court erred in denying plaintiff's motion to vacate the order of equitable distribution that defendant obtained by default." We agree. We also are persuaded the October 12, 2018 order was improvidently entered in the first instance.

Appellate review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Appellate courts "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Deference is appropriately accorded to factfinding; however, the trial judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review." Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

"[A]pplications for relief from equitable distribution provisions contained in a judgment . . . are subject to [Rule 4:50-1] and not, as in the case of alimony,

13

support, custody, and other matters of continuing jurisdiction of the court, subject to a 'changed circumstances' standard." Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004) (quoting Pressler, Current N.J. Court Rules, cmt. 1.7 on R. 4:50-1 (2004)). In general, "the opening of default judgments should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Morales v. Santiago, 217 N.J. Super. 496, 501 (App. Div. 1987) (quoting Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App. Div. 1964)).

A determination on a motion for relief under Rule 4:50-1 is "left to the sound discretion of the trial court, guided by principles of equity," F.B. v. A.L.G., 176 N.J. 201, 207 (2003), and "warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion," U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion will be found "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

"A Family Part judge has broad discretion . . . in allocating assets subject to equitable distribution," Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012), and "in dividing marital assets the court must take into account the

14

liabilities as well as the assets of the parties," <u>Monte v. Monte</u>, 212 N.J. Super. 557, 567 (App. Div. 1986); <u>see also</u> <u>Slutsky v. Slutsky</u>, 451 N.J. Super. 332, 348 (App. Div. 2017). "[T]he goal of equitable distribution . . . is to effect a fair and just division of marital [property]." <u>Steneken v. Steneken</u>, 183 N.J. 290, 299 (2005) (second alteration in original) (citation and internal quotation marks omitted).

"To fashion an equitable distribution award, the trial judge must identify the marital assets, determine the value of each asset, and then decide 'how such allocation can most equitably be made.'" <u>Elrom</u>, 439 N.J. Super. at 444 (quoting <u>Rothman v. Rothman</u>, 65 N.J. 219, 232 (1974)). Additionally, under N.J.S.A. 2A:34-23.1, the Legislature has provided sixteen factors the trial judge "shall consider" in fixing an equitable distribution award. Here, as defendant rightly concedes, the trial court "did not set forth the factors enumerated in N.J.S.A. 2A:34-23.1" when rendering its equitable distribution award. Moreover, the October 12, 2018 order lacked the necessary factual underpinnings and legal conclusions to justify the award.

<u>Rule</u> 1:7-4(a) states:

> The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written

order that is appealable as of right, and also as required by <u>R.</u> 3:29. The court shall thereupon enter or direct the entry of the appropriate judgment.

Plainly, under its terms, <u>Rule</u> 1:7-4 does not exempt a trial court from making findings where a party is in default. Also, a trial court's failure to make explicit findings and clear statements of reasoning "constitutes a disservice to the litigants, the attorneys, and the appellate court." <u>Gnall v. Gnall</u>, 222 NJ. 414, 428 (2015) (quoting <u>Curtis v. Finneran</u>, 83 N.J. 563, 569-70 (1980)). Therefore, the court is required to "state clearly its factual findings and correlate them with the relevant legal conclusions." <u>Ibid.</u> (quoting <u>Curtis</u>, 83 N.J. at 570). Here, the trial court failed to follow the mandates of <u>Rule</u> 1:7-4 before entering its October 12, 2018 order, so we are convinced it abused its discretion in denying plaintiff's <u>Rule</u> 4:50-1 motion.

While we recognize the trial court's equitable distribution award was born of a default hearing, the judge was obliged to ensure defendant demonstrated by a preponderance of evidence that he was entitled to the sweeping relief he requested. <u>See</u> <u>Clementi v. Clementi</u>, 434 N.J. Super. 529, 532 (Ch. Div. 2013) (Even after entry of default, the movant "still has an ongoing obligation to persuade the court, by a preponderance of the evidence, that the proposal for equitable distribution is fair and equitable under the specific facts of the case.").

16

Because the record is devoid of evidence defendant satisfied his burden, we need not determine whether plaintiff established excusable neglect or fraud entitling her to relief from the October 12 order under Rule 4:50-1(a) or (c). Moreover, even if we were inclined to examine plaintiff's excusable neglect and fraud claims, such an effort would be futile due to the sparse record before us. Therefore, we reverse that portion of the December 3, 2019 order denying plaintiff's motion to set aside the October 12 order and remand for further proceedings. Upon remand, plaintiff shall be entitled to the restoration of her complaint upon the filing of a CIS, consistent with Rule 5:5-2(b).[11]

---

[11] As already noted, plaintiff's pleadings were not dismissed with prejudice prior to the default hearing. In Kolczycki v. City of E. Orange, 317 N.J. Super. 505, 516 (App. Div. 1999), despite agreeing that the judge did not abuse his discretion in suppressing defenses, we reversed a default judgment because the orders were "without prejudice." Critically, we held "actions as profound in their effect as a suppression of defenses cannot be informally ordered or informally enforced. Giving literal effect to the order, defendants should not have been barred from any defenses, . . . until and unless a 'with prejudice' order was entered." Ibid. Similarly, here, because the judge did not enter a dismissal of plaintiff's complaint "with prejudice," it was a mistaken exercise of discretion for him to proceed to a default hearing and enter a default judgment against plaintiff based on alleged discovery misconduct. We hasten to add that a "trial court has an array of available remedies to enforce compliance with a court rule or one of its orders." Williams v. Am. Auto Logistics, 226 N.J. 117, 124, (2016) (quoting Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115, (2005)). In its selection of a sanction, a court must consider "[t]he varying levels of culpability of delinquent parties," Georgis v. Scarpa, 226 N.J. Super. 244, 25 (App. Div. 1988), and "[t]he extent to which [one party] has impaired

Assuming plaintiff files her CIS and her complaint is reinstated, the Family Part judge assigned to this matter shall set a schedule for the parties to complete any necessary discovery. Thereafter, the judge shall conduct a hearing, in the presence of, and with the full participation of, both parties and any counsel of record, to resolve the parties' financial issues as they relate to equitable distribution of the parties' assets and liabilities, as well as counsel fees. At that proceeding, due consideration must be given by the judge to the statutory factors set forth in N.J.S.A. 2A:34-23.1, and any factual and credibility findings made by the court must correlate to the court's legal conclusions.

---

[the other's] case may guide the court in determining whether less severe sanctions will suffice," Williams, 226 N.J. at 125 (second and third alterations in original) (quoting Gonzalez, 185 N.J. at 116). The "ultimate sanction of dismissal" is to be used "only sparingly." Abtrax Pharms., 139 N.J. at 514 (quoting Zaccardi v. Becker, 88 N.J. 245, 253 (1982)). "If a lesser sanction than dismissal suffices to erase the prejudice to the non-delinquent party, dismissal of the complaint is not appropriate and constitutes an abuse of discretion." Georgis, 226 N.J. Super. at 251. "The Supreme Court has instructed that the assessment of the appropriate sanction for the violation of an order requires consideration of 'a number of factors, including whether the plaintiff acted willfully and whether the defendant suffered harm, and if so, to what degree.'" N.J. Div. of Youth & Fam. Servs. v. M.G., 427 N.J. N.J. Super. 154, 171 (App. Div. 2012) (citation omitted). "The 'overriding objective' remains to allow 'the defaulting party his [or her] day in court.'" Ibid. (citation omitted).

III.

We need only briefly comment on defendant's cross appeal. He argues that because plaintiff acted in "bad faith," the trial court improperly denied his counsel fee request.

It is well established that even when there is not a financial disparity between the parties, "where a party acts in bad faith the purpose of a counsel fee award is to protect the innocent party from unnecessary costs and to punish the guilty party." Welch v. Welch, 401, N.J. Super. 438, 448 (Ch. Div. 2008) (citing Yueh v. Yueh, 329 N.J. Super. 447, 461 (App. Div. 2000)). We also recognize that "[t]he assessment of counsel fees is discretionary." Slutsky, 451 N.J. Super. at 365. Thus, we review such determinations for an abuse of discretion. Ibid. In this context, an abuse of discretion arises when the trial judge has not considered and applied the Rule 5:3-5[12] factors or otherwise has failed to make

---

[12] Rule 5:3-5 provides, in part, that when considering a counsel fee award, a court should consider, among other factors,

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount

adequate findings to support the counsel fee decision. <u>Clarke v. Clarke ex rel.</u>

<u>Costine</u>, 359 N.J. Super. 562, 572 (App. Div. 2003).

We are persuaded such an abuse of discretion occurred here. Indeed, the judge's truncated analysis of defendant's counsel fee application is captured in the following brief excerpt from his December 3, 2019 oral opinion:

> The defendant's cross motion seeking attorney fees, defendant's attorney has submitted a certification that does comply with [<u>Rules</u> 4:42-9 and 5:3-5] and RPC 1.5. Making a determination with regard to counsel fees under Court <u>Rule</u> 5:3-5, there's a number of factors to be considered and one of those is the ability of the parties to pay their own fees or fees of other - - financial information - - more or less in equipoise and each party's responsible for their own counsel fees and costs.

Because the judge did not analyze the factors set forth in the Rules he cited, we are constrained to vacate that provision of the December 3, 2019 order denying defendant's counsel fee request. Further, due to the interdependency of defendant's counsel fee request with the other issues raised on appeal, we are

---

> of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [<u>Rule</u> 5:3-5(c).]

satisfied his application for fees should abide the plenary hearing to be conducted on remand.

## IV.

Lastly, we observe that when a trial judge has made credibility findings based on an improperly limited evidentiary record, the judge may be viewed as committed to his or her original findings, despite new evidence offered on remand. Therefore, it is appropriate to remand this matter to a different trial judge. See R. L. v. Voytac, 199 N.J. 285, 306 (2009) (stating that "[b]ecause the trial court previously made credibility findings, we deem it appropriate that the matter be assigned to a different trial court."); see also Penbara v. Straczynski, 347 N.J. Super. 155, 163 (App. Div. 2002) (same).

In sum, we reverse the December 3, 2019 denial of plaintiff's Rule 4:50-1 motion, vacate the December 3, 2019 denial of defendant's counsel fee request, vacate the October 12, 2018 order in its entirety, and remand for further proceedings to allow plaintiff to cure her default with the filing of a CIS and seek restoration of her pleadings, pursuant to the Rules of Court. Thereafter, the parties shall exchange discovery as ordered by the remand court, and the court shall conduct a plenary hearing on the parties' equitable distribution and counsel fee issues.

A-1905-19

Reversed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1905-19