**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0129-20

IN RE: PRUDENTIAL LIFE
INSURANCE COMPANY OF
AMERICA TORT LITIGATION

LINDA GUYDEN,

     Plaintiff-Appellant,

v.

LEEDS, MORELLI & BROWN,
LLP, LENARD LEEDS, ESQ.,
STEVEN A. MORELLI, ESQ.,
and JEFFREY K. BROWN, ESQ.,

     Defendants-Respondents.

          Argued June 6, 2022 – Decided June 30, 2022

          Before Judges Rothstadt, Mayer and Natali.

          On appeal from the Superior Court of New Jersey, Law
          Division, Bergen County, Docket No. L-3571-10.

          Kenneth S. Thyne argued the cause for appellant (Roper
          & Thyne, LLC, attorneys; Kenneth S. Thyne, of
          counsel and on the briefs).

Janice J. DiGennaro (Rivkin Radler LLP) of the New York Bar, admitted pro hac vice, argued the cause for respondents (Rivkin Radler LLP, attorneys; Janice J. DiGennaro, John J. Robertelli, and Michael C. Mulè, on the brief).

PER CURIAM

Plaintiff Linda Guyden appeals from an April 15, 2020 order granting a motion for summary disposition filed by defendants Leeds, Morelli & Brown, LLP, Lenard Leeds, Esq., Steven K. Morelli, Esq., and Jeffrey K. Brown, Esq. (collectively, Leeds), and an August 28, 2020 order denying her motion for reconsideration. We reverse and remand.

The parties are intimately familiar with the history of this litigation which has spanned more than twenty years. The background giving rise to plaintiff's legal malpractice claims against Leeds is detailed in our prior opinion, Guyden v. Leeds, Morelli & Brown, LLP, Lenard Leeds, Esq., Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq., Docket No. A-1027-15 (App. Div. June 11, 2018) (Guyden I).[1] We provide a brief summary of the relevant facts.

Guyden, and approximately 300 other individuals, filed employment discrimination claims against Prudential Life Insurance Company of America,

---

[1] An even more detailed recitation of this lengthy litigation is set forth in Lederman v. Prudential Life Insurance Co. of America, Inc., 385 N.J. Super. 324 (App. Div. 2016).

2

Inc. (Prudential). Because there were a large number of plaintiffs suing Prudential, the employment discrimination action was designated for special handling as a multicounty litigation in Bergen County. Leeds represented Guyden in that litigation. While represented by Leeds, Guyden signed a May 5, 1999 agreement obligating her to engage in confidential alternate dispute resolution to resolve her claims against Prudential. However, Guyden discharged Leeds "after learning the full details of a fee arrangement with Prudential that rewarded the [Leeds] law firm for steering its clients into alternate dispute resolution . . . ." Guyden I, slip op. at 3.

In 2010, Guyden sued Leeds for legal malpractice and as part of the multicounty litigation against Prudential. After discovery, Leeds moved for summary judgment. In 2015, the multicounty litigation judge granted summary judgment to Leeds. In dismissing the complaint, the judge found Guyden discontinued Leeds' legal services long before her case against Prudential resolved. As a result, he concluded Guyden extracted herself from "the sphere of any initial wrongdoing or malpractice, and thus could not demonstrate proximate causation of compensable injury." Id. at 4. Guyden appealed the dismissal of her legal malpractice action.

A-0129-20

In Guyden I, we affirmed the trial court's order granting summary judgment to Leeds on all claims with the exception of a single, discrete issue – Guyden's ability to prove proximate causation on her legal malpractice claims. On remand, we instructed the trial court to:

> develop the record definitely and resolve the critical factual question of whether Prudential, before settling, offered Guyden the opportunity to set aside the arbitration award and allow her to litigate her discrimination claims in court. If such an offer was never made, then the [trial] court's dispositive finding of a lack of sufficient proof of proximate causation as to Guyden was mistaken, and summary judgment shall be vacated in her case. If the court on remand finds there is a genuine factual dispute as to whether such an offer was extended, that factual question shall be resolved by a jury.
>
> [Id. at 4-5.]

After our remand, the parties obtained information relevant to the proximate causation issue. Specifically, Leeds obtained a transcript from a telephone conference conducted on July 21, 2009 by then federal magistrate judge, now Circuit Court judge, Patty Shwartz.[2] At that time, Judge Shwartz

---

[2] The transcript of the July 21, 2009 conference in the federal court matter is dated July 20, 2018. Appellate counsel for Leeds could not confirm the receipt date of the transcript but acknowledged the transcript was obtained after issuance of our opinion in Guyden I.

A-0129-20

handled Guyden's federal court lawsuit against Prudential.[3]  The transcript of the July 21, 2009 conference before Judge Shwartz was not a part of the record in Guyden I.

We briefly summarize certain federal court proceedings relevant to this appeal.  In 2009, Judge Shwartz conducted several conferences regarding Guyden's federal lawsuit against Prudential.

At these conferences, Christopher Watkins represented Guyden and Gerard Harper and Theodore Wells, Jr. represented Prudential.  Judge Shwartz held a telephonic conference on July 21, 2009 to establish a discovery schedule before deciding Guyden's pending motion to vacate the arbitrator's decision. During this conference, Prudential's counsel raised a preliminary issue based on settlement discussions with the parties.  Referring to the multicounty litigation then pending in the New Jersey Superior Court, Bergen County, Harper advised

---

[3]  In 2000, Guyden retained new counsel, Christopher Watkins, who filed a lawsuit against Prudential in federal court.

In 2004, a federal court judge ruled Guyden was required to arbitrate her claims against Prudential under the May 5, 1999 agreement she signed while represented by Leeds.

The arbitrator determined Guyden failed to prove her discrimination claims against Prudential.  Guyden then filed a motion in federal court to vacate the arbitrator's decision.  The motion to vacate was the subject of the July 21, 2009 conference before Judge Shwartz.

A-0129-20

"[w]e are in the mix of mammoth discovery," with "100,000 documents exchanged so far" and "scores and scores of depositions" to be scheduled by the parties. Prudential's counsel asked if Judge Shwartz would stay the federal court action or grant an extension of time for the parties to pursue settlement in the federal court action. If the judge was not so inclined, Harper suggested the following:

> failing that then we want to seriously consider whether we simply default on the [vacatur] – agree to the [vacatur] of the Arbitration Order and put Ms. Guyden to her proofs on the underlying [42 U.S.C. §] 1981 Claim in front of the jury that she sought all along. Because to go through this twice just seems to us, you know, extremely inefficient and – and burdensome for Prudential.

Because the parties were unable to agree on the scope of discovery on the motion to vacate the arbitration award, Harper told Judge Shwartz

> I would rather just say, all right, let's vacate the arbitration offer and put [plaintiff's] 1981 action in front of a jury. She lost -- arbitration. We'll put her – we'll put her too [sic] her proof about whether she was the subject to [sic] racial discrimination in front of the jury that she claims to want, and we'll try that case. That one we can do – that one we can do very quickly, with . . . limited discovery.

According to the July 21, 2009 transcript, Guyden's counsel replied, "— to that right now." At this point, Judge Shwartz interceded because counsel were

6

A-0129-20

talking over each other. The judge stated, "defense counsel, I think was concluding by say[ing], if hypothetically the arbitration issues were put aside and a 1981 action were pursued[,] your view is it would be a much more concise set of facts and evidence to introduce." The judge and Prudential's counsel discussed the possible length of time required for a jury trial on Guyden's claims. Judge Shwartz followed up by stating Prudential's counsel would need to "make a judgment call on behalf of your clients on that subject."

When asked by the judge for a response, Watkins stated, "I'll stipulate to that right now, that's fine." Watkins explained he had "no academic interest in going through the process of showing [Prudential] that [the May 5 Agreement to arbitrate] is unenforceable."

Thereafter, the following discussion transpired between Judge Shwartz and Prudential's counsel:

> THE COURT: What – let me ask the Defendants, if you're – look right now our marching orders are to effectuate the goals of Judge Hayden, articulated in July of 2008. If you are serious about kind of vacating the – conceding the vacating of the ARB award or whatever the proper language is, and – and foregoing any rights you might to that award or judgment from the arbitrator, then we should probably make that decision sooner rather than later.
>
> MR. REILLY: I agree Your Honor.

THE COURT: So how much time would you need . . . I have to enter an order that fulfills the directives from [Judge Hayden] . . . but I also want to be mindful that you're serious about that then takes a slightly different approach in terms of what our responsibilities will be on a pre-trial.

How much time would you need to chat with your client about their views of this? Do you think you'd know in a week?

MR. HARPER: Your Honor, my partner and I are not in the same location. May I address him [?]

THE COURT: Absolutely . . . .

MR. HARPER: Ted, how much time do you think we need?

MR. WELLS: In – in to make the decision?

MR. HARPER: Yes, a week?

MR. WELLS: Yeah, look – look the issue for us is whether there would be grounds to ask for a stay or an extension and if not whether it makes sense to just drop, or do – as – Mr. Harper said to vacate the arbitration issue and just go the merits. Because just listening to the discussion it goes beyond the issue of discovery. Plaintiffs have already talked about the attorney-client privilege issue, for example, that we spent two days in hearings on. And – and [p]laintiffs are suggesting now – now they want to re-tee up that very issue in front of Your Honor or Judge – or Judge Hayden.

So there – look, there's no question that is not in our client's interest to be litigating the same issue, simultaneously in two forums. So – so the question for

A-0129-20

– for me, and that's why I think we need a week, is whether there is any basis to ask Your Honor and Judge Hayden to either stay your case or abstain, and if there's not such a basis, I would think, I would be recommending to my client that we just go to the merits for the Guyden claim and let us continue to fight the litigation in state court.

THE COURT: Okay. My inclination is to do the following and then I'll hear from everyone. To put in an Order that sets forth deadlines by which you have to serve interrogatories and document demands as it relates to cases currently casted, that is to examine enforceability of the [May 5] Agreement, giving you an outside dates [sic] to serve, respond, and to complete depositions. Then you'll have an Order in place. If you make an application to Stay, so be it.

. . . .

And if the [d]ecision is to proceed to the so-called the merits, to the 1981 [a]ction, then let me know, we'll reconvene, set a schedule to accomplish whatever discovery might be needed for that.

Before concluding the July 21, 2009 conference, Judge Shwartz entered an order establishing discovery deadlines and setting a briefing schedule to resolve Guyden's motion to vacate the arbitration award.

On August 5, 2009, Judge Shwartz conducted another telephone conference. However, this conference was not on the record and there is no transcript memorializing the discussions among counsel and Judge Shwartz on

9

that date. Significantly, counsel for Guyden and Prudential have completely different recollections of the discussions on August 5, 2009.

According to Harper, during the August 5, 2009 conference call, Prudential offered Guyden the ability to try her underlying employment discrimination claims before a jury, and her attorney agreed. Based on this exchange, Harper stated the parties ended the discussion with Judge Shwartz regarding discovery issues and addressed the scheduling of a settlement conference or mediation with the court.

Watkins and Guyden disagreed with Harper's memory of the discussions during the August 5, 2009 conference with Judge Shwartz. Watkins denied Prudential extended an offer to Guyden. He also disputed ever agreeing to any offer. According to Watkins, Harper hypothetically posited Prudential might withdraw its opposition to vacating the arbitration decision and allow Guyden to present her claims to a jury. Watkins indicated a willingness to agree to such a proposition "if it was logistically possible." Watkins claimed Prudential never agreed to withdraw its opposition to the motion to vacate the arbitration award and, therefore, there was never any offer.

Around that time, Watkins recommended Guyden settle her claims against Prudential. He explained that if Prudential agreed to a jury trial, a jury might

not award damages. He also noted it was unlikely Guyden would get a trial date in the near future and her claims would be more than ten years old at the time of a trial. Watkins further warned that if Guyden prevailed before a jury, Prudential would appeal any jury award and further delay resolution of Guyden's claims.

Guyden ultimately settled with Prudential for an amount she perceived to be less than the full value of her case. She acknowledged Watkins cautioned that vacating the arbitration award would be an uphill battle. Because of the risks and pitfalls of continued litigation, Guyden stated Watkins recommended settling with Prudential for a reduced amount.

Guyden denied being told Prudential offered to vacate the arbitration award and proceed with a jury trial on her employment discrimination claims. If Guyden had received such information in 2009, she claimed she would not have settled with Prudential in September 2009. Instead, she would have gone to trial or waited until Prudential made a settlement offer more in line with a sum she believed her case to be worth.

On August 21, 2009, Judge Shwartz conducted a settlement conference. Based on discussions during that conference, Guyden and Prudential executed a confidential settlement agreement dated September 14, 2009. The settlement agreement resolved Guyden's claims against Prudential. However, Guyden

11

expressly retained the right to continue her legal malpractice action against Leeds. In a September 14, 2009 order, Guyden's federal court action against Prudential was dismissed with prejudice.

The factual disputes regarding the offer to proceed to trial on Guyden's employment discrimination claims against Prudential in the federal court action were relevant to the remanded issue in Guyden I. Based on conflicting facts submitted to the multicounty litigation judge on the legal malpractice claims, we held summary judgment was "inappropriate" on the issue of proximate causation. Guyden I, slip op. at 16. We explained that if Prudential made an offer to Guyden to vacate the arbitration award and allow a jury trial on her claims, and if her attorney rejected such an offer, Guyden would be unable to establish proximate causation on her legal malpractice claims. Ibid. On the other hand, "if Prudential never made such [a] definitive proposal, then Guyden's claims were prematurely dismissed on summary judgment. Proximate causation would be a proper question for the jury . . . ." Ibid.

We vacated summary judgment in favor of Leeds on the issue of proximate causation and remanded the matter to the trial court for "development of the record . . . concerning Prudential's alleged offer." Ibid. Absent

12

"conclusive proof on that subject," we stated "the factual dispute must be resolved by a jury." Id. at 16-17.

On March 6, 2019, the parties appeared for case a management conference before a Law Division judge to address discovery on the remanded issue. At this conference, hoping to resolve the factual disputes identified in Guyden I, the remand judge asked Leeds' counsel to determine if the August 5, 2009 conference call with Judge Shwartz had been recorded. The remand judge stated, "[i]t's the [d]efendant who said that [the] Prudential attorney made the offer in an oral conversation during a conference with [Judge Shwartz]. So it's their responsibility to see if it's been recorded."

Because Guyden, Watkins,[4] and Harper had not been deposed, the remand judge ordered "pointed depositions" of these individuals on the "discre[te] issue" whether Prudential made an offer to Guyden. Guyden's attorney objected, believing there was no point in taking depositions because the deponents would merely repeat the assertions contained in their prior certifications. Despite this objection, the remand judge directed the parties to complete these depositions. However, the judge declined to order any additional discovery.

---

[4] Guyden retained her current counsel when it appeared Watkins would be a witness in her legal malpractice case included in the multicounty litigation.

A-0129-20

Counsel then argued about the scope of the court-ordered depositions, and the application of the attorney-client privilege. The remand judge determined Guyden's deposition would be limited to conversations about Prudential's alleged offer. With that proviso, Guyden's attorney waived "the attorney-client privilege with respect to that particular time frame and those particular conversations." However, the remand judge did not place any limits on the time frame, stating Leeds was "entitled to ask [Guyden] any conversation she had on the issue of [what] the Appellate Division articulated."

In a March 11, 2019 confirming letter to counsel, the remand judge instructed the parties to "proceed on targeted discovery on whether or not Prudential . . . made an offer to plaintiff Guyden to, in effect, wipe out the arbitration and the [May 5] Agreement and litigate a discrimination claim instead in court." The remand judge also required Leeds "to secure confirmation from the federal court that the purported status conference with the federal magistrate in August 2009 had been recorded" and to so "advise counsel for plaintiff and this court." The judge further directed Guyden be deposed within forty-five days, noting she "waived any attorney[-]client privilege regarding any conversations between her and Mr. Watkins regarding the issue of the purported offer to waive the ADR arbitration and proceed to trial." Although document

14

discovery was not ordered, the remand judge wrote, "if any witness has any documentation upon which they seek to reference or rely on regarding the 'crux' of the issue as articulate[d] by the Appellate Division, said documents will be produced at the depositions."

After the conference with the remand judge, Leeds served a subpoena upon the Chief Deputy Clerk of the federal court to obtain information regarding court conferences before Judge Shwartz in August 2009. In response, the Chief Deputy Clerk advised the August 21, 2009 settlement conference before Judge Shwartz was not recorded, and the case docket did "not show any conference or hearing held on" August 5, 2009. In explaining notations reflecting recorded conferences, the Chief Deputy Clerk gave an example of a "July 21, 2009 minute entry, noting a telephone conference before Magistrate Judge Patty Shwartz."

In an April 17, 2019 letter, Leeds forwarded a copy of the Chief Deputy Clerk's subpoena response to Guyden's attorney. At that time, Leeds did not inform Guyden or the remand judge that it ordered and received a transcript of the July 21, 2009 conference before Judge Shwartz. Nor did Leeds provide a copy of that transcript to Guyden prior to the depositions in the remand proceeding.

15

On May 23, 2019, Guyden and Watkins were deposed. During the depositions, Guyden's attorney objected over 100 times, asserted the attorney-client privilege, and instructed the deponents not to answer numerous questions.[5] The answers that Guyden and Watkins did provide during their depositions were consistent with their prior certifications in opposition to Leeds' 2014 summary judgment motion.

During Watkins's deposition, counsel for Leeds introduced a transcript of the July 21, 2009 conference with Judge Shwartz. Because the transcript had not been produced prior to the depositions, Guyden's attorney terminated the deposition.

On June 27, 2019, Leeds filed a motion to dismiss Guyden's complaint or, in the alternative, to compel completion of the depositions of Guyden and Watkins. Guyden opposed the motion and filed a motion for partial summary judgment and other relief. Leeds opposed Guyden's motion.

---

[5] Without addressing the merits of the objections by Guyden's attorney, we note Rule 4:14-3(c) limits objections by counsel during the taking of a deposition to "the form of a question or to assert a privilege, a right to confidentiality or a limitation pursuant to a previously entered court order." The objections asserted by Guyden's attorney tested the bounds of the Court Rule expressly limiting objections during a deposition.

During argument on the motions, the remand judge asked why the July 21, 2009 transcript of the conference before Judge Shwartz had not been previously provided. Leeds responded it understood the trial court requested a transcript of the August 5, 2009 telephone conference. Leeds conceded the July 21, 2009 transcript demonstrated the offer made by Prudential on that date was a suggestion and not "a definitive offer." However, Leeds asserted Prudential made a definitive offer to Guyden during the unrecorded August 5 conference call with Judge Shwartz. To support its contention, Leeds argued additional discovery was required, including completion of the Watkins and Guyden depositions. Leeds also contended Guyden had the ability to obtain the July 21, 2009 transcript at any time as the document was a publicly available court record.

The remand judge denied the motions. Instead, the judge allowed Leeds to seek summary judgment under Rule 4:23-2 based on perceived violations of discovery orders by Guyden's attorney.

On November 8, 2019, Leeds filed for summary judgment under Rule 4:23-2, requesting the remand judge take as established "that Prudential . . . before settling, offered [Guyden] . . . through her then-counsel, Christopher Watkins, Esq., the opportunity to set aside the arbitration award and allow her

17

to litigate her discrimination claims in court."  In moving under Rule 4:23-2, Leeds relied on the objections lodged by Guyden's attorney during the depositions, Guyden's failure to produce documents, and Guyden's violations of discovery orders entered since August 2009.  Guyden opposed the motion.

The remand judge heard oral argument on March 6, 2020.  In an April 15, 2020 order and attached written decision, the judge granted summary judgment to Leeds, finding "the transcript of the July 21, 2009 case management conference definitively establish[ed] the offer of Prudential to try the discrimination case."  Thus, the judge concluded Guyden could not establish proximate causation on her malpractice claims.

In his written decision, the remand judge identified two issues.  The first, "to determine whether the remand issue has in fact been resolved.  That is, whether [Guyden], before settling, was offered the opportunity by Prudential to waive the arbitration ruling and try the discrimination case."  The second, "independent of the definitive answer as to whether the trial offer was in fact extended, is whether the trial offer should nonetheless be deemed as established in the affirmative pursuant to R. 4:23-2(b)(2)."  If the answer to either or both questions was affirmative, the judge held Guyden could not "be found to have

A-0129-20

been 'trapped' in arbitration, as she claims, in which case she cannot prove proximate cause, therefore warranting summary judgment."

The judge found Prudential made an offer to Guyden based on the July 21, 2009 transcript. He wrote:

> Viewing the facts in the light most favorable to plaintiff, the non-moving party, and according plaintiff all **reasonable** inferences therefrom, this court concludes that in the context of the federal litigation, during the case management of July 21, 2009, on the record, Mr. Harper, on behalf of Prudential, offered plaintiff the opportunity to set aside the arbitration award and try the discrimination case, and Mr. Watkins accepted such offer on behalf of plaintiff with apparent authority to do so. Although there is no written memorialization of the offer beyond the transcript of July 21, 2009, there is conclusive evidence that the offer was acted upon by the parties. The circumstantial evidence – which the law recognizes is just as valid as direct evidence – demonstrates that after the proposal was made, the parties were operating on the presumption that the offer by Mr. Harper was effectuated.

The remand judge found the "only fair reading" of the colloquy among Harper, Watkins, and Judge Shwartz on July 21, 2009, was "clearly that Mr. Harper offered to abandon the arbitration ruling and to simply try the discrimination case, and that Mr. Watkins, on behalf of plaintiff with apparent authority, stipulated to the arrangement; both the offer and the acceptance being made without reservation from either side."

A-0129-20

While Judge Shwartz characterized Prudential's offer as "hypothetical[]," the remand judge noted that description "did not vitiate the offer and acceptance" but merely constituted "judicial exercise of cautious prudence." The remand judge concluded there was only one plausible inference from the discussions on July 21, 2009, "and that is that the trial offer was made, and accepted."

The remand judge determined the discussions with Judge Shwartz on August 5, 2009 "were largely immaterial to the proximate [causation] issue before the court." He explained the conduct of Guyden and her attorney between July 21 to August 21, 2009, demonstrated the "parties were . . . operating based on the presumption that the offer was effectuated." Specifically, the judge relied on Watkins's statement to his client that it would be a "long tough road ahead" if Guyden did not settle, and his advice that, "even if [Guyden] won the motion to vacate the arbitration award and defendant's appeal, it could be more than five years before her discrimination claims were heard by a jury." The judge determined the discussions between Guyden and Watkins demonstrated "the settlement strategy of plaintiff was set by the reality of Prudential's new approach to the long, protracted litigation, i.e., 'Let's try the [discrimination] case.'"

A-0129-20

Additionally, even assuming "the trial offer was not definitively made," the remand judge agreed "with the defense argument that the fact should be deemed established as a result of plaintiff's counsel's failure to comply with multiple court orders pertaining to discovery on the issue" under Rule 4:23-2(b). Specifically, the judge cited the "egregious" objections by Guyden's attorney during the depositions "that went to the heart of the remand issue." In rejecting the argument by Guyden's attorney that any sanction should be directed to counsel rather than the client, the judge wrote:

> It would be a miscarriage of justice to permit the manipulation of court orders and the discovery rules to result in the continuation of this exhausting litigation, which has consumed so much time and effort in the trial and appellate courts.

On May 7, 2020, Guyden moved for reconsideration. In an August 28, 2020 order and attached written decision, the remand judge denied reconsideration. The judge rejected Guyden's request to impose a lesser sanction, such as awarding counsel fees and instructing Guyden and Watkins be redeposed. The judge explained, "any lesser sanction would trivialize the conduct of plaintiff's counsel over the course of this nearly two-decade long litigation, and would eviscerate the significance of the Supreme Court's Rule 4:23-2."

A-0129-20

On appeal, Guyden argues there were genuine issues of material fact on the remand issue precluding summary judgment as a matter of law. Further, she contends the remand judge erred in finding the July 21, 2009 transcript of the conference with Judge Shwartz "evidenced a definitive offer from Prudential to waive the [alternate dispute resolution] and go to trial." Additionally, Guyden claims the remand judge erred "in applying the ultimate sanction under Rule 4:23-2(b)(1) as a basis for granting summary judgment and dismissing the complaint." We agree.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same legal standard as the trial court. Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019). A motion for summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Globe Motor Co. v.

Igdalev, 225 N.J. 469, 480 (2016)).  Summary judgment "is not meant to 'shut a deserving litigant from his [or her] trial.'"  Ibid. (quoting Brill, 142 N.J. at 540).

In Guyden I, we held summary judgment in favor of Leeds would only be appropriate under specific circumstances.  Guyden I, slip op. at 16.  We determined if, after development of a record, Prudential never made "a definitive proposal" to vacate the arbitration award and allow Guyden to try her case before a jury, "then Guyden's claims were prematurely dismissed at summary judgment."  Ibid.

Viewing the discussions on July 21, 2009 before Judge Shwartz in the light most favorable to Guyden, the issue of a "definitive proposal" by Prudential remains unresolved.  The transcript seemingly demonstrates any offer to vacate the arbitration award and proceed to trial was conditional.  Specifically, Prudential's purported offer would only be effective if: (1) Judge Shwartz agreed to extend or stay the federal court action in the event Prudential moved for such relief; and (2) Prudential agreed to the offer.

On a motion for summary judgment, the remand judge was required to draw all legitimate inferences from the facts in favor of Guyden.  He did not do so.  Rather, the judge made inferences based on his interpretation of the discussions memorialized in the July 21, 2009 transcript.

In interpreting the July 21, 2009 transcript as conveying a definitive offer, the remand judge overlooked a statement by Leeds' attorney during oral argument on Leeds' prior motion for summary judgment. On June 28, 2019, when arguing the prior summary judgment motion, Leeds conceded Prudential made "a suggestion" rather than "a definitive offer" during the July 21, 2009 conference. In its renewed motion for summary judgment, Leeds argued the unrecorded conference on August 5, 2009 established Prudential's definitive offer.

Because the August 5, 2009 conference before Judge Shwartz was unrecorded and counsel submitted conflicting certifications attesting to discussions at that conference, the remand judge was required to draw inferences from the proffered evidence in favor of Guyden. Rather, the remand judge instead relied on his own inferences regarding the August 5, 2009 conference based on "circumstantial evidence" of the parties' conduct in the federal court action between July 21, 2009, and September 14, 2009, the date of the confidential settlement agreement.

Moreover, the remand judge reversed his earlier position regarding the July 21, 2009 conference. In Leeds' first motion for summary judgment, the remand judge concluded Prudential's offer during the July 21, 2009 conference

was "hypothetical." On Leeds' refiled summary judgment motion, the remand judge found Prudential made a definitive offer based on that same transcript. The judge's reversal on the definitiveness of Prudential's offer on July 21, 2009 is further evidence the judge overlooked clear relevant and material factual disputes. Because the significant factual disputes on the definitiveness of Prudential's offer should have been resolved in favor of Guyden as the non-moving party on summary judgment, we are satisfied the remand judge's order granting summary judgment to Leeds must be reversed.

We next consider Guyden's argument the remand judge erred in granting summary judgment to Leeds under Rule 4:23-2. She contends the judge abused his discretion because the severity of the sanction, dismissal of her complaint with prejudice, was manifestly unjust and a lesser sanction should have been imposed. We agree.

We review a trial court's sanction for discovery misconduct to determine "whether the trial court abused its discretion." Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995). We will uphold a trial court's discovery sanction "unless an injustice appears to have been done." Ibid. "Sanctions imposed by a trial court will not be disturbed on appeal if they are just and

reasonable under the circumstances."   Aetna Life & Cas. Co. v. Imet Mason

Contractors, 309 N.J. Super. 358, 365 (App. Div. 1998).

Under Rule 4:23-2(b), "[i]f a party . . . or authorized agent of a party . . .

fails to obey an order to provide or permit discovery," the court "may make such

orders in regard to the failure as are just," including:

> (1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;
>
> (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the introduction of designated matters in evidence;
>
> (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof with or without prejudice, or rendering a judgment by default against the disobedient party;
>
> (4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders.
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

A-0129-20

Sanctions for violation of discovery orders require consideration of "a number of factors, including whether the plaintiff acted willfully and whether the defendant suffered harm, and if so, to what degree." Gonzales v. Safe & Sound Sec. Corp., 185 N.J. 100, 115 (2005). Courts must "carefully weigh what sanction is the appropriate one, choosing the approach that imposes a sanction consistent with fundamental fairness to both parties." Williams v. Am. Auto Logistics, 226 N.J. 117, 125 (2016) (quoting Robertet Flavors, Inc. v. Tri-Form Constr., Inc., 203 N.J. 252, 282-83 (2010)).

Dismissal of a claim for failure to comply with discovery is the "last and least favorable option." Il Grande v. DiBenedetto, 366 N.J. Super. 597, 624 (App. Div. 2004). "The varying levels of culpability of delinquent parties justify a wide range of available sanctions against the party violating a court rule. . . . If a lesser sanction than dismissal suffices to erase the prejudice to the non-delinquent party, dismissal of the complaint is not appropriate and constitutes an abuse of discretion." Georgis v. Scarpa, 226 N.J. Super. 244, 251 (App. Div. 1988). See also Robertet Flavors, Inc., 203 N.J. at 274 (recognizing dismissal as the ultimate sanction to be ordered only when no lesser sanction will suffice to erase the prejudice). Cases should be disposed of on their merits and dismissal for discovery violations should be "ordered only when no lesser

sanction will suffice to erase the prejudice suffered by the non-delinquent party, or when the litigant rather than the attorney was at fault."  Abtrax Pharms., Inc., 139 N.J. at 514.

Here, applying Rule 4:23-2(b)(1), the remand judge concluded violations of discovery orders by Guyden's attorney allowed the trial court to designate as an established fact that Prudential made a definitive offer to Guyden to vacate the arbitration award and try her case before a jury.  However, this was the very issue on which we remanded in Guyden I and directed development of a record to resolve the issue.  Thus, it was inappropriate under the circumstances for the judge to conclusively establish as a fact that Prudential made such an offer in granting summary judgment to Leeds under Rule 4:23-2.

Without resolving whether the conduct of Guyden's attorney during the court-ordered depositions was "egregious," or if there were violations of discovery orders issued in 2009, prior to the involvement of Guyden's current counsel, we are satisfied the severity of the sanction imposed by the remand judge went too far.

Counsel failed to cite a single reported decision by a New Jersey court entering judgment in favor of a party as a result of discovery violations by another party.  Additionally, contrary to Leeds' argument, the remand judge

A-0129-20

made no finding Leeds suffered any prejudice based on the purported discovery violations by Guyden's attorney. Moreover, if Leeds believed the objections asserted by Guyden's attorney during the depositions violated the remand judge's order, Leeds' attorney could have sought a ruling by telephoning the trial court immediately. However, counsel for Leeds chose not to contact the trial court regarding the scope of the deposition questions related to the remand proceeding or the appropriateness of the objections by Guyden's attorney.

Here, there were lesser sanctions available to remedy any perceived violations of discovery orders. For example, the remand judge could have ordered Guyden and Watkins to be re-deposed and clarified the permissible scope of the questioning and Guyden's waiver of the attorney-client privilege as to her discussion with Watkins. Or the judge could have precluded Guyden from deposing Prudential's attorneys as part of the discovery on the remand issue. Additionally, the judge could have ordered Guyden or her attorneys to pay the costs associated with re-deposing witnesses and awarded attorney's fees to Leeds.

Nothing in Rule 4:23-2 compels dismissal of a party's claims for violation of discovery orders. Rather, the Rule permits the imposition of various sanctions, such as the payment of "reasonable expenses, including attorney's

fees" resulting from the offending party's conduct. R. 4:23-2. Because <u>Guyden I</u> required the development of a record on the definitiveness of an offer by Prudential, we are satisfied dismissal of Guyden's legal malpractice actions was too drastic, and the remand judge should have considered imposing lesser sanctions under the circumstances.

While we reverse the remand judge's grant of summary judgment in favor of Leeds for the reasons stated, we decline Guyden's request to determine summary judgment would never be appropriate in this case. We do so because the record required in <u>Guyden I</u> has not been established based upon the evidence adduced thus far. Moreover, such a ruling is premature because the parties contend continued discovery is necessary to comply with our decision in <u>Guyden I</u>. We leave it to the trial judge's discretion to determine how best to proceed with discovery to create the necessary record or, alternatively, whether further discovery is unnecessary because proof of a "definitive offer" will never exist, and the issue must be resolved by a jury.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0129-20